UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| SONYA BACOTE<br>Plaintiff<br><br>v.<br><br>SARGENT MANUFACTURING COMPANY<br>Defendant | Civil Action No. 3:24-cv-01637-KAD<br><br>SEPTEMBER 29, 2025 |

**SARGENT'S MEMORANDUM OF LAW IN SUPPORT OF SUMMARY JUDGMENT**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Defendant Sargent Manufacturing Company ("Sargent"), by its attorneys, Jackson Lewis P.C., respectfully submits the following memorandum in support of its Motion for Summary Judgment on the entirety of the Complaint filed by Plaintiff, Sonya Bacote ("Plaintiff").

## I. INTRODUCTION

This Court needs to go no further than Plaintiff's deposition testimony to determine that Plaintiff's claims are without merit. At every turn, Plaintiff admitted that the allegations in her Complaint are inaccurate, and that Sargent repeatedly accommodated her medical restrictions and treated her well, even going so far as to say that she "built [her] life off of" working at Sargent and that it is a "[g]ood company to work for". (Exhibit 1, Pl's Dep. 89:7-10.) Indeed, Sargent has accommodated Plaintiff's various medical conditions for decades, either by modifying her job duties or granting leaves of absence when necessary. Sargent has employed Plaintiff for over 40 years, including through today, even though Plaintiff has been totally incapable of working for over the last two years and thus is not qualified to perform the essential functions of her job.

This case arises over just a handful of events, i.e., Plaintiff taking FMLA leave in 2022, being returned to her position as a Labor Grade 8, Assembler/Packer/Machine Operator and assigned layout work within that job title, Plaintiff requesting and being granted accommodations that Plaintiff admits allowed her to perform the essential functions of her job, and then Plaintiff going out on medical leave in April 2023 and not returning because, as Plaintiff admits, she has been medically incapable of working since that time. Plaintiff's critical admissions coupled with the documentary evidence support summary judgment in favor of Sargent on the entirety of Plaintiff's Complaint.

Specifically, Plaintiff cannot meet her *prima facie* burden to prove disability discrimination under the Americans with Disabilities Act ("ADA") or retaliation under the Family and Medical Leave Act ("FMLA") because Plaintiff did not experience any adverse employment action, much less one under circumstances giving rise to an inference of discrimination or retaliation. Any duties to which Plaintiff was assigned upon her return from leave in July 2022 were within her job classification as a Labor Grade 8, Assembler/Packer/Machine Operator, and Plaintiff admits that she has been unable to return to work since going out on leave in April 2023. Even if Plaintiff can meet her *prima facie* burden, Sargent has legitimate non-discriminatory and non-retaliatory reasons for any action it took, and there is no evidence of pretext.

Plaintiff's FMLA retaliation claim further fails because it is barred by the applicable statute of limitations. The same is true for Plaintiff's interference claim under the FMLA as well as Plaintiff's claim under the Connecticut Family and Medical Leave Act ("CTFMLA"). Even if Plaintiff's FMLA interference and CTFMLA claims were timely, they would still fail because Plaintiff cannot show Sargent interfered with her rights under either statute. Sargent granted

Plaintiff all the leave she requested in 2022 and returned Plaintiff to her position of Labor Grade 8, Assembler/Packer/Machine Operator upon her return from leave in July 2022.

Summary judgment is also appropriate on Plaintiff's failure to accommodate claim under the ADA because Plaintiff cannot identify any reasonable accommodation that Sargent did not grant. When Plaintiff raised an issue lifting boxes as part of the layout work she was assigned to perform in July 2022, Sargent directed her not to pick up anything that was higher than three feet and then lowered the boxes. After the boxes were lowered, Plaintiff was able to work in the layout position within her medical restrictions. Plaintiff's preference to work in an alternative work cell or area within her job classification is not actionable under the ADA; rather, Sargent properly exercised its discretion to allow Plaintiff to perform the essential functions of her role. Moreover, while Plaintiff faults Sargent for not returning her to work while she was "awaiting surgery" in 2023 (Compl. ¶¶ 28-29), once under oath, Plaintiff admitted that she has been medically incapable of working since April 2023. Far from failing to accommodate Plaintiff, Sargent kept her out on a medical leave of absence for over two years.

Finally, Plaintiff cannot sustain a claim for intentional infliction of emotional distress ("IIED"). To the extent Plaintiff's IIED claim is premised on emotional distress related to her alleged workplace injuries, it is barred by the exclusivity provision of Connecticut's Workers' Compensation Act. Further, Plaintiff cannot show that Sargent engaged in extreme or outrageous conduct intended to cause her emotional distress or that she suffered severe emotional distress as a result of Sargent's alleged conduct.

As Plaintiff acknowledges, Sargent is a "good company to work for." The record does not support the claims asserted, and accordingly, summary judgment should enter in Sargent's favor.

## II. PROCEDURAL POSTURE

On February 3, 2023, Plaintiff filed a charge with the Connecticut Commission on Human Rights and Opportunities ("CHRO") and the Equal Employment Opportunity Commission alleging disability discrimination and failure to accommodate. (*See* Exhibit 2, Charge.) Following a factfinding conference, and after reviewing all the evidence, the assigned CHRO investigator concluded that there was no reasonable cause for believing that a discriminatory practice occurred. (*See* Exhibit 3, Draft No Reasonable Cause Finding.) Plaintiff thereafter commenced this action in Connecticut Superior Court with service of process dated September 18, 2024. (*See* Exhibit 4, Return of Summons.) On October 15, 2024, Sargent timely removed this action to this Court on the basis of federal question jurisdiction. (Docket Entry No. 1.)

## III. UNDISPUTED FACTS

### A. Plaintiff's Employment with Sargent.

Sargent is an industry leading manufacturer of commercial locks and architectural door hardware for university campuses, healthcare facilities, government and municipal buildings, as well as commercial environments. *See* About Us | SARGENT Locks | SARGENT (last accessed: September 22, 2025).

Plaintiff has been employed by Sargent for 42 years. (Pl's Dep. 88:19-21.) She describes Sargent as a "[g]ood company to work for" and one that she "built [her] life off of." (Pl's Dep. 89:7-10.) Since at least 2011, Plaintiff has been in the role of Labor Grade 8, Assembler/Packer/Machine Operator within the Exits Department. (Pl's Dep. 67:1-4, 21-23.)

As an Assembler/Packer/Machine Operator, Plaintiff had the general responsibility of assembling, inspecting, and packing parts/assemblies in an efficient and cost-effective manner. (*See* Exhibit 5, Job Description.) Management has authority to assign employees to different tasks

within their job classification. (Pl's Dep. 80:12-22.) Employees rotate assignments within the different subassembly groups (i.e. parts pack, screw pack, chassis spring, layout, rail assembly, concealed cell, flat trim cell) depending "on when management needs you to fill in." (Pl's Dep. 80:20-22, 82:15-23.) Per Plaintiff, "at any given time," an employee could be moved from one area to another to cover for a labor shortage or if, for example, an employee was out on leave. (Pl's Dep. 85:12-25; *see also* Compl. ¶ 38) ("Defendant did not assign employees into permanent positions and would place employees into assignments based on operational need.").

### B. Plaintiff Admits that Sargent Has Accommodated Her Various Medical Restrictions.

Throughout her employment with Sargent, Plaintiff had required accommodations for various injuries and medical conditions. There is no dispute that Sargent granted all requested accommodations.

In 2004, Plaintiff injured her elbow while "working on a 10 line and twisting." (Pl's Dep. 25:14-24.) Sargent accommodated Plaintiff's injury by placing her on another section of the 10 Line. (Pl's Dep. 26:3-16.) There was no other accommodation Plaintiff needed that was not provided by Sargent. (Pl's Dep. 27:1-4.) Plaintiff had no concerns of retaliation following this injury and receipt of an accommodation. (Pl's Dep. 26:17-21.)

Also in 2004, Plaintiff tore her rotator cuff performing rail assembly. (Pl's Dep. 27:5-11, 15-19.) Sargent granted Plaintiff six to eight months of leave to have and recover from surgery. (Pl's Dep. 29:4-11.) Sargent also agreed not to place Plaintiff back on rail assembly. (Pl's Dep. 29:12-21, 73:6-74:4.) Plaintiff does not recall any negative comments from management about her needing time off and not being able to perform rail assembly work as a result of her shoulder injury. (Pl's Dep. 30:8-12.) She admits that Sargent accommodated the restrictions related to her shoulder injury for at least 17 years. (Pl's Dep. 54:21-55:1.)

Plaintiff had another shoulder surgery in or about 2011. (Pl's Dep. 30:13-24.) Sargent granted Plaintiff six to eight months of leave to have and recover from surgery. (Pl's Dep. 30:22-31:5.) Plaintiff does not recall any accommodations for her shoulder injury that she needed in the 2011-2013 timeframe that Sargent did not provide. (Pl's Dep. 34:11-14.)

In 2015, Plaintiff had surgery for trigger finger. (Pl's Dep. 40:9-12, 46:18-21.) Sargent granted Plaintiff at least four weeks of leave at this time. (Pl's Dep. 40:19-41:3.) When Plaintiff returned to work, she could not handle the second station of the chassis assembly. (Pl's Dep. 41:7-17.) Sargent worked with Plaintiff to accommodate this restriction and eventually moved Plaintiff off chassis assembly altogether. (Pl's Dep. 42:15-45:6, 72:1-19, 157:21-158:15.) Plaintiff "do[es] not know" whether she was retaliated against in connection with this injury. (Pl's Dep. 45:7-10.)

In 2017, Plaintiff had complications related to trigger finger. (Pl's Dep. 48:14-19.) When Plaintiff returned to work, Sargent placed her in the screw pack cell as an accommodation for her restrictions. (Pl's Dep. 48:14-21.) Plaintiff admits that Sargent provided her with all necessary accommodations in 2017. (Pl's Dep. 49:16-23.)

In addition to the above, Sargent has accommodated Plaintiff for the following medical conditions:

- In 1996, Plaintiff was temporarily totally disabled from her duties for a little over a month. Sargent accommodated Plaintiff's need for leave at this time. (Pl's Dep. 155:9-19.)

- In 2007, Plaintiff was restricted from lifting or standing for long periods of time. (Pl's Dep. 155:20-156:9.) Sargent accommodated these restrictions; Plaintiff acknowledged "[t]hey've been doing it for years." (Pl's Dep. 156:4-13.)

- In 2016, Plaintiff was limited to a four-hour shift for two weeks. (Pl's Dep. 157:5-17.) Sargent provided Plaintiff this reduced schedule as requested. (Pl's Dep. 157:18-20.)

- In June 2018, Plaintiff submitted a doctor's note to Sargent stating that she needed to elevate her leg "as much as possible". (Pl's Dep. 158:21-25.) Sargent allowed Plaintiff to elevate her leg when necessary. (Pl's Dep. 160:19-25.)

- Plaintiff is diabetic and requested she be allowed to take breaks as needed to address issues with her blood pressure. (Pl's Dep. 111:5-6; Exhibit 6, Medical Note.) Sargent accommodated this request as well. (Pl's Dep. 111:19-114:1, 161:5-162:10.)

No one in management made any negative comments to Plaintiff about any of these restrictions, medical conditions, or accommodation requests. (Pl's Dep. 162:11-164:15.)

### C. <u>Plaintiff Is Removed from Parts Pack Due to Repeated Errors and then Takes FMLA Leave.</u>

In approximately July of 2020, Plaintiff moved to parts pack, part-time, to cover for an employee who went on a leave of absence. (Pl's Dep. 114:9-12.) Plaintiff moved full-time into parts pack in approximately October of 2020. (Pl's Dep. 115:15-19.) Plaintiff wanted to work in parts pack and was able to do so while honoring her medical restrictions. (Pl's Dep. 115:20-116:9.) Plaintiff acknowledges that, while she was working in parts pack, it was "very important" to pack the products ordered by customers accurately. (Pl's Dep. 116:12-16, 122:1-14) ("Q. S the customer would get the wrong parts, right? A. Absolutely, yes. Q. And that would probably be an upset customer? A. Of course.").

In April 2022, Plaintiff's management told her that she was being removed from parts pack because of mistakes she made while packing customer orders. (Pl's Dep. 122:18-124:15; Exhibit 7, Handwritten Note.) Plaintiff believes she was removed from parts pack because of errors in customer orders but also because General Manager, Jeffrey Granath, "didn't really care for" her. (Pl's Dep. 126:1-5, 18-24.) When asked if there was any particular reason she believed Mr. Granath "didn't really care for her", Plaintiff responded "I don't have a clue." (Pl's Dep. 126:13-17.) Plaintiff's union did not file a grievance over her removal from parts pack. (Pl's Dep. 128:9-11.)

While Plaintiff alleges in her Complaint that she was blamed for errors that occurred at times she was on leave from work (Compl. ¶ 13), her deposition testimony refutes this allegation. Plaintiff testified that she was working in parts pack in June of 2021 when a customer received an incorrect order twice. (Pl's Dep. 129:2-131:19; Exhibit 8, Emails Regarding Incorrect Orders.) Plaintiff also acknowledges that in or about January or February 2021, she was asked to fix two packs that were packed improperly. (Pl's Dep. 134:8-17.) Per Plaintiff's testimony, "we had to go back over and fix all that . . . It was a mess." (Pl's Dep. 134:18-21.) Plaintiff additionally admits that there was a four-piece job she mixed up, and that it is possible it is the April 2022 order for "3 exit devices with 72 43 cylinders" that preceded Sargent's decision to remove her from parts pack. (Pl's Dep. 135:16-136:9; *see also* Exhibit 8, DEF39.)

Shortly after being removed from parts pack, Plaintiff was briefly placed in the screw park cell, and then took a leave of absence under the FMLA and CTFMLA. (Pl's Dep. 140:1-12, 142:10-13; Exhibit 9, Leave Paperwork.) Plaintiff received all the leave she requested from Sargent in 2022. (Pl's Dep. 149:23-25.) She admits that no one at Sargent interfered with her ability to take FMLA leave. (Pl's Dep. 154:14-16.) The individual who replaced Plaintiff in parts pack has a disability and/or has medical restrictions. (Exhibit 13, Bobinski Declaration ¶ 3.)

### D. **<u>Upon Her Return From Leave, Plaintiff is Moved Into a Layout Position Within Her Job Classification and is Further Accommodated.</u>**

When Plaintiff returned from leave in July 2022, Sargent moved Plaintiff to the layout area of the Exits Department. (Pl's Dep. 166:16-19.) Plaintiff admits that the layout work that she was assigned in 2022 fell within her job description. (Pl's Dep. 62:11-14, 64:22-66:25.) For example, in layout, Plaintiff was responsible for selecting parts and package combinations. (*Id.*; Exhibit 5.) Plaintiff was assigned layout work to replace an employee who had just retired and because she had the requisite knowledge and experience to perform the same. (Pl's Dep. 166:20-167:22;

Bobinski Dec. ¶ 4.) Plaintiff discussed the move to layout with her union, and no grievance followed. (Pl's Dep. 167:19-22.)

In July 2022, Plaintiff had an issue lifting boxes as part of the layout work. (Pl's Dep. 172:2-7.) When she raised the issue to her manager and Human Resources, they asked Plaintiff to provide an updated doctor's note outlining her restrictions. (*Id.*) After Plaintiff submitted the doctor's note, Sargent lowered the boxes Plaintiff had to lift, and by Plaintiff's own admission, that made her job in layout easier to do. (Pl's Dep. 172:17-22.) After the boxes were lowered, Plaintiff was able to work in the layout position within her medical restrictions. (Pl's Dep. 173:14-175:16.) Prior to the boxes being lowered, Sargent directed Plaintiff not to pick up anything that was higher than three feet. (*See* Exhibit 10, July 25, 2022 Email Correspondence.) Rather, Plaintiff was directed to notify her manager so that the work could be assigned to another staff member. (*Id.*)

Plaintiff alleges that her move into the layout area "disqualified [her] from all assembler overtime opportunities," but once again, her own deposition testimony proves that it is untrue. (Compl. ¶ 20.) Plaintiff admits she was able to work overtime in the layout position. (Pl's Dep. 99:24-100:14.) Further, Plaintiff does not believe that Sargent ever intentionally denied her an overtime opportunity because she had medical restrictions or a disability. (Pl's Dep. 101:9-14.)

It was Plaintiff's medical restrictions that limited her from overtime opportunities. In November 2022, Plaintiff submitted a doctor's note to Sargent stating that she could walk two to four hours, stand two to four hours, and could work five hours per shift. (Pl's Dep. 175:21-176:6; Exhibit 11, Doctor's Note.) Plaintiff's maximum shift was eventually increased to seven hours. (Pl's Dep. 176:21-177:1; Exhibit 11.) Sargent accommodated all these restrictions. (Pl's Dep. 176:13-15, 177:2-3.)

Further, the only union positions at Sargent that come with incentive pay are for cell leads, team leads, and inspectors. In addition, employees may receive incentive pay for performing work outside their job classification or filling in for a role that receives incentive pay. (Bobinski Dec. ¶ 5.) Thus, employees in the layout subassembly group/cell do not receive additional pay by virtue of their placement in layout. Nor would Plaintiff have received incentive pay if she went into flat trim as requested in July 2022. (*Id.* ¶ 6.)

**E. <u>Plaintiff Takes A Leave of Absence for Shoulder Surgery and Has Remained Out of Work Since</u>.**

In April 2023, Plaintiff went on leave to have rotator cuff surgery. (Pl's Dep. 177:5-10.) Sargent granted Plaintiff FMLA leave, and then a leave of absence as an accommodation under the ADA for Plaintiff to have and recover from surgery. (Exhibit 12, Leave Paperwork.) There was no work that Plaintiff could perform at Sargent between going out on leave in April 2023 and having rotator cuff surgery in August 2023. (Pl's Dep. 177:11-178:3.)

Plaintiff reached maximum medical improvement in or about May 2024 but could not return to work at Sargent due to ongoing restrictions. (Pl's Dep. 178:4-179:1.) Plaintiff does not believe there was any work she could perform at Sargent as of May 2024 and understood why Sargent made the decision that she could not return to work with her restrictions. (Pl's Dep. 179:2-15.)

In December 2024, Plaintiff had surgery on her other shoulder. (Pl's Dep. 179:16-20.) She has not recovered from that surgery and remains unable to work. (Pl's Dep. 179:21-180:17.) ("Q. Do you think there is any work you could do – A. No, there isn't…). Plaintiff remains on medical leave from Sargent to this day. (Bobinski Dec. ¶ 7.)

When asked about her alleged emotional distress, Plaintiff testified that it was caused by "nitpicking" from management and once being accused of stealing. (Pl's Dep. 181:3-194:3.)

Plaintiff did not testify to emotional distress as a result of being placed in layout or being out of work. (*See id.*) Notably, Plaintiff had been diagnosed with anxiety and depression well before she was ever removed from parts pack, moved into the layout position, or went out on leave in April 2023. (Pl's Dep. 142:17-22.)

## IV. LAW AND ARGUMENT

### A. Standard of Review

Rule 56(a) of the Federal Rules of Civil Procedure provides that a party is entitled to summary judgment if "there is no genuine issue of material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; its requirement is that there be no *genuine* issue of *material* fact." (Emphasis in original.) *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). For purposes of a motion for summary judgment, a fact is material if it "might affect the outcome of the suit under the governing law." *Id.* at 248. An issue of fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

An employer is entitled to summary judgment "unless the plaintiff can point to evidence that reasonably supports a finding of prohibited discrimination." *Spiegel v. Schulmann*, 604 F.3d 72, 80 (2d. Cir. 2010). "Unless the nonmoving party offers 'some hard evidence showing that its version of the events is not wholly fanciful[,]' summary judgment is granted to the moving party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007); Fed. R. Civ. P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986) ("One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims ... and … it should be interpreted in a way which allows it to accomplish this purpose.").

Applying this standard, summary judgment is warranted on the entirety of Plaintiff's Complaint.

**B. <u>Sargent Did Not Fail to Accommodate Plaintiff.</u>**

In Count Two, Plaintiff alleges that Sargent failed to accommodate her alleged disabilities in violation of the ADA by placing her in the layout position and not allowing Plaintiff to "return back to the workplace" while she was "awaiting surgery." (Compl., Count Two, ¶¶ 41, 44.) The record evidence, including Plaintiff's own admissions during her deposition, does not support these allegations, and accordingly Sargent is entitled to summary judgment on Count Two.

"A plaintiff makes out a *prima facie* case of disability discrimination arising from a failure to accommodate by showing each of the following: (1) [P]laintiff is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations." *McBride v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92, 96-97 (2d Cir. 2009) (internal citations and quotations omitted).

There is no evidence that Sargent refused to accommodate Plaintiff. Upon her return from leave in July 2022, Plaintiff was assigned to layout duties, which were within her job classification as a Labor Grade 8, Assembler/Packer/Machine Operator. When Plaintiff raised an issue lifting boxes as part of the layout work, Sargent directed her not to pick up anything that was higher than three feet and then lowered the boxes. (Exhibit 10.) After the boxes were lowered, Plaintiff was able to work in the layout position within her medical restrictions. (Pl's Dep. 173:14-175:16.) For the avoidance of doubt, Plaintiff testified as follows:

> Q. And after you submitted this note to Sargent in July of 2022, Scott lowered the boxes?
> A. Yeah.
> Q. And it made your job easier to do in layout?
> A. Oh, absolutely.

Q Okay. So after the boxes were lowered in July of 2022 you were able to work in the layout position within your medical restrictions?

A. Yes. In other words, no overhead reaching. Exactly. But I was still lifting the rails. That was over five pounds. That was a whole different issue.

Q. Do you see here that your lifting restriction is ten pounds, not five?

A. Yes.

Q. So that was the lifting restriction that you had as of August of 2022?

A. Right.

Q. So as of August of 2022, you would have been able to lift the eight-pound rails based on this doctor's note?

A. According to what he says.

Q. So do you see that this doctor's note on the second sentence under light work says that you could do frequent lifting or carrying objects up to ten pounds?

A. Up to, yes.

Q. So it wouldn't matter that you were lifting eight, eight-pound rods or rails. That was still in your medical restrictions?

A. Right . . . .

(*Id.*; Exhibit 14, Doctor's Note.)

The fact that Plaintiff preferred to work in another area, such as flat trim, is legally irrelevant. (*See* Compl. ¶ 23.) "[E]mployers are not required to provide a perfect accommodation or the very accommodation most strongly preferred by the employee." *Noll v. IBM*, 787 F.3d 89, 95 (2d Cir. 2015); 29 C.F.R. § 1630 ("[Although] the preference of the individual with a disability should be given primary consideration[,] . . . the employer providing the accommodation has the *ultimate discretion* to choose between effective accommodations, and may choose the less expensive accommodation or the accommodation that is easier for it to provide."). Sargent properly exercised its discretion to provide Plaintiff with a reasonable accommodation that allowed her to perform the essential functions of the layout work.

Plaintiff also cannot establish that Sargent failed to accommodate her by keeping her out on medical leave as opposed to returning her to work while she was awaiting surgery in 2023. Here, too, Plaintiff's deposition testimony resolves this claim in Sargent's favor:

Q. Was there any work you could do at Sargent between going out in April 2023 until you had your rotator cuff surgery?

A. No, because it was totally torn here, and it was a total disability or something.

(Pl's Dep. 177:24-178:3.)

Plaintiff further admits that she has not been able to return to work at any point since initially going on leave in April 2023. (Pl's Dep. 179:21-180:17.) Far from failing to provide an accommodation, Sargent has kept Plaintiff out on medical leave *for over two years*. (Pl's Dep. 178:4-179:1, 179:21-180:17; Bobinski Dec. ¶ 7.)

On this record, no reasonable factfinder could conclude that Sargent failed to accommodate Plaintiff in violation of the ADA, and accordingly, summary judgment should enter on Count Two.

### C. Plaintiff's Intentional Infliction of Emotional Distress Claim is Legally and Factually Deficient.

In Count Three, Plaintiff alleges that Sargent "knew or reasonably should have known" that moving her into the layout position "would likely and did result in harm." (Compl., Count Three, ¶ 47.) Plaintiff further alleges that Sargent's refusal to allow her to return to work caused her to suffer emotional distress. (*Id.* ¶ 52.) Plaintiff's IIED claim in Count Three fails because: (1) it is barred by the exclusivity provision of the Connecticut's Workers' Compensation Act; (2) Sargent's conduct was not extreme or outrageous as a matter of law nor intended to cause severe emotional distress; and (3) Plaintiff cannot establish that she suffered severe emotional distress as a result of Sargent's alleged conduct.

#### 1. Plaintiff's IIED Claim is Barred by the Exclusivity Provision of Connecticut's Workers' Compensation Act.

The Connecticut Workers' Compensation Act states in relevant part: "[A]n employer who complies with the . . . [Act] shall not be liable for any action for damages on account of personal injury sustained by an employee arising out of and in the course of his employment . . . ." Conn. Gen. Stat. § 31-284 (a). "Our Workers' Compensation Act (act); General Statutes § 31-275 et seq.;

provides the exclusive remedy for an employee who sustains an injury that arises out of and in the course of employment, unless the employee can establish an employer's subjective intent to create a dangerous situation with a substantial certainty of injury to the employee [thereby] avoiding application of General Statutes § 31-284 (a), the exclusive remedy provision of the [act] . . . ." *Hassiem v. O&G Indus.*, 197 Conn. App. 631, 632 (2020). "Decisions issued by [the Connecticut Appellate Court] and [the Connecticut] Supreme Court repeatedly have stressed the need for this stringent rule to uphold the legislative intent underlying our workers' compensation scheme." *Id.*

Plaintiff's emotional distress claim, as pleaded, arises as a result of her shoulder injury in April 2023. (*See, e.g.*, Compl., Count Three, ¶ 51) ("As a result of Defendant's discriminatory, actions, Plaintiff sustained a re-injury to her shoulder, necessitating an additional surgery causing her to suffer additional extreme emotional distress"). "As the emotional injuries are directly linked to a physical injury sustained in the course of employment, they fall within the purview of the Workers' Compensation Act." *See Prevuznak v. Happy Hound Daycare, LLC*, Docket No. LLI-CV24-6036352-S, 2025 Conn. Super. LEXIS 2126, at *10 (Conn. Super. Ct. July 16, 2025) (citing *Driscoll v. General Nutrition Corp.*, supra, 252 Conn. 215, 752 A.2d 1069; *Santiago-Harper v. Town Fair Tire Centers of Connecticut, LLC*, No. HHD-CV-22-6162742-S, 2023 Conn. Super. LEXIS 3211, at *8 (Conn. Super. Ct. Dec. 5, 2023) ("[A] plaintiff cannot unbundle her claim for emotional distress from her compensable physical injury so as to avoid the exclusive remedy provision of the act.") (internal citations and quotations omitted).

Any argument that the intentional tort exception applies here fails. "Anything short of genuine intentional injury sustained by the employee and caused by the employer is compensable under the Workers' Compensation Act." *Prevuznak*, 2025 Conn. Super. LEXIS 2126, at *8. "The exception does not include 'accidental injuries caused by gross, wanton, willful, deliberate,

intentional, reckless, culpable, or malicious negligence, breach of statute, or other misconduct of the employer' short of genuine intentional injury." *Id.* (quoting *Suarez v. Dickmont Plastics Corp.*, 242 Conn. 255, 278-79 (1997)). Plaintiff has no evidence that Sargent genuinely intended to cause her injury, especially given her admissions that Sargent made accommodations to the layout position such that it could be performed within her medical restrictions. (Pl's Dep. 172:17-22, 173:14-20.)

Accordingly, Plaintiff's IIED claim is barred by the exclusivity provision of the Workers' Compensation Act and should be dismissed.

**2. <u>Sargent's Conduct Was Not Extreme or Outrageous As a Matter of Law Nor Intended to Cause Plaintiff Severe Emotional Distress.</u>**

Alternatively, Plaintiff's IIED claim fails because Sargent's alleged conduct is not extreme or outrageous as a matter of law and there is no evidence that Sargent intended to cause Plaintiff severe emotional distress.

"In order for the plaintiff to prevail in a case for liability under . . . [intentional infliction of emotional distress], four elements must be established. It must be shown: (1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." *Appleton v. Bd. of Educ.*, 254 Conn. 205, 210 (2000) (alterations in original) (internal quotation marks omitted).

"The Appellate and Supreme Courts have set a high bar for establishing extreme and outrageous behavior." *Shea v. City of Waterbury*, No. CV085007926, 2009 Conn. Super. LEXIS 794, at *25-26 (Super. Ct. Feb. 20, 2009) (citing *Carnemolla v. Walsh*, 75 Conn. App. 319, 332-

333, *cert. denied*, 263 Conn. 913, 821 A.2d 768 (2003)). As the Supreme Court of Connecticut has explained:

> Liability for intentional infliction of emotional distress requires conduct that exceeds all bounds usually tolerated by decent society. . . . Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to the average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!' . . . Conduct on the part of the defendant that is merely insulting or displays bad manners or results in hurt feelings is insufficient to form the basis for an action based upon intentional infliction of emotional distress.

*Appleton*, 254 Conn. at 210-11 (internal quotation marks and citations omitted) (principal's making condescending comments in front of colleagues, questioning plaintiff's vision and ability to read, telephoning daughter to say plaintiff acting differently, and asking police to escort plaintiff from school not intentional infliction of emotional distress).

"Whether a defendant's conduct is sufficient to satisfy the requirement that it be extreme and outrageous is initially a question for the court to determine. Only where reasonable minds disagree does it become an issue for the jury." *Carnemolla*, 75 Conn. App. at 331-332. "[I]n assessing a claim for intentional infliction of emotional distress, the court performs a gatekeeping function. In this capacity, the role of the court is to determine whether the allegations of a complaint . . . set forth behaviors that a reasonable fact finder could find to be extreme or outrageous." *Gagnon v. Housatonic Valley Tourism District Comm'n*, 92 Conn. App. 835, 847, 888 (2006). "In exercising this responsibility, the court is not fact finding, but rather is making an assessment whether, as a matter of law, the alleged behavior fits the criteria required to establish a claim premised on intentional infliction of emotional distress." *Id*. (internal quotation marks omitted.)

Sargent's decision to place Plaintiff in the layout position—which was within her job classification— following another employee's retirement was not extreme or outrageous nor intended to cause Plaintiff emotional distress. While Plaintiff alleges that Sargent knew the layout position "blatantly disregarded her accommodation requirements" and "would likely and did result in harm to the Plaintiff," when under oath at her deposition, Plaintiff admitted that Sargent accommodated her almost immediately by lowering the boxes she had to pick up, making her job easier to do. (Pl's Dep. 172:2-22.) Plaintiff further admitted that, after the boxes were lowered in July 2022, she was able to work in the layout position within her medical restrictions. (Pl's Dep. 173:14-175:16.) The fact that Plaintiff sustained a workplace injury nearly a year later does not transform Sargent's decision to move Plaintiff into layout into extreme or outrageous conduct, especially considering that Plaintiff had a number of workplace injuries when working in other areas and was limited in her ability to perform work in other areas.

Nor can Plaintiff claim that Sargent acted in an extreme or outrageous manner by not allowing her to return to work when Plaintiff admits that there was no work she could do while waiting for and recovering from surgery and that Sargent has acted reasonably by keeping her out on leave. (Pl's Dep. 177:24-178:3, 179:21-180:17.)

Courts routinely dismiss intentional infliction of emotional distress under far worse circumstances. *See, e.g.*, *Lopresti v. Norwalk Pub. Sch.*, CV156017660S, 2017 Conn. Super. LEXIS 431, at *12, *27-28 (Conn. Super. Ct. Mar. 1, 2017) (allegations that "the defendant unlawfully discriminated against the plaintiff when it eliminated her classroom, and undertook to alter her work conditions, in a manner which exacerbated her medical conditions" did not rise to the level of extreme and outrageous); *Prevuznak*, 2025 Conn. Super. LEXIS 2126, at *9-10 (dismissing intentional infliction of emotional distress claim based on allegations that the plaintiff,

who worked at a pet daycare, was discouraged from seeking medical care following a dog bite and forced to participate in a re-acclimation with the dog that bit her).

For these additional reasons, summary judgment should be granted to Sargent on Count Three.

**3. <u>Plaintiff Cannot Establish that She Suffered Severe and Emotional Distress as a Result of Sargent's Alleged Conduct.</u>**

To sustain an IIED claim, Plaintiff must prove that Sargent's alleged actions were the cause of severe emotional distress. *See Skroubelos v. Volynsky*, Docket No.: FST-CV-22-6056897-S, 2024 Conn. Super. LEXIS 766, at *32 (Conn. Super. Ct. Apr. 19, 2024) ("Here, as alleged in the complaint, the landscaping defendants' alleged trespass is separate conduct from the emotional distress that they allegedly caused the plaintiffs. Harriet Skroubelos' feelings of emotional distress are also independent of the trespass itself because while discovering the trespass may have been upsetting to her, the allegations do not state any details explaining how the trespass itself caused her emotional distress.").

There is no evidence that Sargent moving Plaintiff into the layout position and keeping Plaintiff out on medical leave through present day caused Plaintiff severe emotional distress. When questioned about her alleged emotional distress during her deposition, Plaintiff acknowledged that she had been diagnosed with anxiety and depression years prior to the alleged adverse actions and that any emotional distress caused by Sargent was unrelated to the layout position or her medical leave in April 2023. (*See* Pl's Dep. 142:17-22, 181:3-194:3.)

For this additional reason, there is no genuine issue of material fact for a jury to decide with respect to Plaintiff's IIED claim in Count Three, and Sargent is entitled to summary judgment on the same.

### D. Sargent Did Not Violate Plaintiff's Rights Under the CTFMLA.

In Count Four, Plaintiff alleges that Sargent violated the CTFMLA on July 5, 2022 by "not restor[ing] [Plaintiff] to the Screw Pack position of employment she held when her leave commenced." (Compl., Count IV, ¶ 54.) Plaintiff's CTFMLA claim is barred by the applicable 180-day statute of limitations. Alternatively, Plaintiff was restored to an equivalent position as defined by the CTFMLA.

#### 1. Plaintiff's CTFMLA Claim is Untimely.

First, Conn. Agency Reg. § 31-51qq-43(a) provides that "[a]ny employee aggrieved by a violation of the provisions of the Act and sections 31-51qq-1 to 31-51qq-52, inclusive, of the Regulations of Connecticut State Agencies may bring a civil action in a court of competent jurisdiction against the employer not later than one hundred eighty (180) calendar days after the employer action alleged to be in violation of this section."

Plaintiff's Complaint was initially filed in Connecticut Superior Court and served on Sargent on September 18, 2024. (*See* Exhibit 4.) September 18, 2024, was more than two years after Plaintiff returned from CTFMLA leave on July 5, 2022, and was placed in the layout position. Accordingly, Plaintiff's CTFMLA claim in Count Four is barred by the applicable 180-day statute of limitations set forth in Conn. Agency Reg. § 31-51qq-43(a).

#### 2. Sargent Restored Plaintiff to an Equivalent Position Following her CTFMLA Leave.[1]

Second, even if Plaintiff's CTFMLA claim was not time barred, it would fail because Plaintiff was restored to an equivalent position. For purposes of the CTFMLA, "[a]n equivalent position is one that is virtually identical to the employee's former position in terms of pay, benefits

[1] To the extent Plaintiff is also alleging a retaliation claim under the CTFMLA, it is also time barred, and also fails on the merits for the same reasons as Plaintiff's FMLA retaliation claim.

and working conditions, including privileges, perquisites and status. It shall involve the same or substantially similar duties and responsibilities, which shall entail substantially equivalent skill, effort, responsibility, and authority." Conn. Agency Reg. § 31-51-qq-23.

At the relevant time, Plaintiff held the position of Labor Grade 8, Assembler/Packer/Machine Operator. (Pl's Dep. 67:1-4.) Per Plaintiff, "at any given time," an employee could be moved from one area to another within the Labor Grade 8 Assembler/Packer/Machine Operator role to cover for a labor shortage or if an employee was out on leave. (Pl's Dep. 85:12-25.)

For example, Plaintiff worked in, at least, the chassis spring, rail assembly, screw pack, and parts pack areas prior to her CTFMLA leave in 2022. (Pl's Dep. 27:5-11, 15-19, 42:15-45:6, 48:14-21, 72:1-19, 157:21-158:15, 114:9-12.) Upon her return from CTFMLA leave, Sargent returned Plaintiff to the Labor Grade 8, Assembler/Packer/Machine Operator role, but simply placed her within an area different than the one she was in prior to her leave, i.e., layout. There is no evidence that Plaintiff's "pay, benefits, working conditions, privileged, perquisites [or] status" were affected by this move. *See* Conn. Agency Reg. § 31-51-qq-23. Plaintiff admits that the layout position into which she was moved in 2022 fell within her job description. (Pl's Dep. 62:11-14, 64:22-66:25.) Further, Plaintiff admits that she was eligible for overtime in the layout position, and her pay and benefits were in no way impacted because incentive pay was not provided in the screw pack area she was in immediately prior to her leave or in the layout position she was placed in following her return from leave. (Pl's Dep. 99:24-100:1; Bobinski Dec., ¶¶ 5-6.) For this additional reason, summary judgment should be granted to Sargent on Count Four.

**E. <u>Plaintiff Cannot Establish that Sargent Retaliated Against Her for Exercising Her Rights Under the FMLA.</u>**

In Count Five, Plaintiff alleges that Sargent retaliated against her for taking FMLA leave by "a. Transferring her to a more arduous Layout position that did not accommodate her medical restrictions; b. Disqualifying her from overtime opportunities she previously had; and c. Denying her incentive pay that prior employees in the Layout position received." (Compl., Count Five, ¶ 63.) Plaintiff's FMLA retaliation claim in Count Five fails because: (1) it is untimely; (2) Plaintiff cannot establish a *prima facie* case of retaliation because she did not suffer an adverse employment action, much less one under circumstances giving rise to an inference of retaliation; and (3) even if Plaintiff can establish a *prima facie* case of retaliation, Sargent has legitimate non-retaliatory reasons for its actions, which Plaintiff cannot demonstrate are pretextual.

**1. <u>Plaintiff's FMLA Retaliation Claim is Untimely.</u>**

Plaintiff commenced this action in Superior Court on September 18, 2024. (Exhibit 4.) The move into the layout position occurred on July 5, 2022, or more than two years prior to the commencement of this action. (Compl. ¶¶ 18-19.) Plaintiff has no evidence of a willful violation, and thus Plaintiff's FMLA retaliation in Count Five is time barred.

The FMLA has a general statute of limitations of two (2) years "after the date of the last event constituting the alleged violation[.]" 29 U.S.C. § 2617(c)(1). If the action is for a "willful violation[,]" however, "such action may be brought within 3 years of the date of the last event constituting the alleged violation[.]" 29 U.S.C. § 2617(c)(2).

Plaintiff does not allege a willful violation of the FMLA. (*See generally* Compl., Count Six.) Even so, "[s]imply asserting that conduct was willful is not enough." *See Kitani v. N.Y. City Transit*, 1:2019-cv-01043, 2025 U.S. Dist. LEXIS 24017, at *28 (S.D.N.Y. Feb. 11, 2025) (citing *Whiteside v. Hover-Davis, Inc.*, 995 F.3d 315, 320-21 (2d Cir. 2021) for the proposition that "under

analogous Fair Labor Standards Act, a plaintiff must do more than make a conclusory assertion that the defendant acted willfully for three-year statute of limitations to apply”). Rather, to establish willfulness, Plaintiff must show that Sargent knew “its conduct [was] prohibited by the FMLA” or acted “with reckless disregard to that fact.” *Id.* at *26.

Plaintiff cannot make such a showing. The undisputed facts demonstrate that she was able to use FMLA leave on numerous occasions without experiencing any retaliation. (*See supra*, pp. 5-7); *Mejia v. Roma Cleaning, Inc.*, 751 F. App’x 134, 136 (2d Cir. 2018) (summary order) (plaintiff did not establish genuine dispute of material fact as to whether defendants acted willfully where, among other things, plaintiff “requested and was granted time off under the FMLA eight times during her tenure”). The mere fact of a move into the layout position does not establish willfulness. *See Thorpe v. Delta Air Lines, Inc.*, 24-CV-01089(HG), 2024 U.S. Dist. LEXIS 221637, at *8 (E.D.N.Y. Dec. 6, 2024) (holding that “[t]he mere fact that Delta terminated Plaintiff while he was on leave did not in and of itself constitute willful conduct”). No reasonable jury could find that Sargent knew that it was violating the FMLA when it restored Plaintiff to a position within her job classification. Plaintiff admits that the layout position could be performed within her medical restrictions, that she was accommodated in the position, and that the position came with opportunity or overtime.

Because Plaintiff cannot establish willfulness, her FMLA retaliation claim is time barred, and accordingly, Sargent is entitled to summary judgment on Count Five.

**2. Plaintiff Cannot Establish a *Prima Facie* Case of Retaliation.**

Even if Plaintiff’s FMLA retaliation claim was timely, it would fail because Plaintiff cannot establish a *prima facie* case.

FMLA retaliation claims are analyzed under the *McDonnell Douglas* burden shifting framework. *See Potenza v. City of New York*, 365 F.3d 165, 168 (2d Cir. 2004).

> In a nutshell, a plaintiff first bears the "minimal" burden of setting out a *prima facie* [discrimination or retaliation] case, and is then aided by a presumption of [discrimination or retaliation] unless the defendant proffers a "legitimate, nondiscriminatory reason" for the adverse employment action, in which event, the presumption evaporates and the plaintiff must prove that the employer's proffered reason was a pretext for [retaliation].

*McPherson v. NY City Dept. of Educ.*, 457 F.3d 211, 215 (2d Cir. 2006). The ultimate burden of persuading the trier of fact that the defendant retaliated against the plaintiff remains at all times with the plaintiff. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 510 (1993).

To establish a *prima facie* case of FMLA retaliation, Plaintiff must show "(1) participation in a protected activity;" (2) that Plaintiff "knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005). Plaintiff cannot establish that she suffered an adverse employment action, much less one under circumstances giving rise to an inference of FMLA retaliation.

**i. <u>Plaintiff Did Not Suffer an Adverse Employment Action</u>**

In the context of FMLA retaliation claims, "a materially adverse action is any action by the employer that is likely to dissuade a reasonable worker in the plaintiff's position from exercising [her] legal rights." *Wasserman v. N.Y.C. Dep't of Educ.*, 24-cv-01719-MMG, 2025 U.S. Dist. LEXIS 131465, at *21 (S.D.N.Y. July 10, 2025) (citing *Millea v. Metro-N.R. Co.*, 658 F.3d 154, 164 (2d Cir. 2011)). "This assessment is objective—the test is whether a reasonable employee would be deterred, without consideration of a plaintiff's 'unusual subjective feelings.'" *Id.* (quoting *Burlington N. & Santa Fe Ty. Co. v. White*, 548 U.S. 53, 68-69, 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006)). While not an exhaustive list, "quintessential examples of adverse

employment actions" include "a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or a formal reprimand." *Wasserman*, 2025 U.S. Dist. LEXIS 131465, at *21.

It is undisputed that Plaintiff was eligible for overtime opportunities when placed in the layout position. (Pl's Dep. 99:24-100:14.) Further, Plaintiff had no entitlement to incentive pay for the work she was doing immediately prior to her FMLA leave. (Bobinski Dec. ¶¶ 5-6.) As for the layout position itself, Plaintiff cannot establish that being placed in a position within her job classification is an adverse employment action. Rather, as the CHRO investigator concluded, the move to layout was "not a 'transfer' or 'demotion', but an assignment to alternative cells within the same job classification. This is within the expectations of an Assembler/Packer/Machine Operator in labor grade 8 employed by" Sargent. (Exhibit 3, ¶ 44.) Indeed, Plaintiff welcomed prior changes to her job duties, including when she was placed in screw pack and removed from rail assembly and chassis spring.

A conclusion that Plaintiff was subject to an adverse employment action for being assigned work within her job classification would turn the law on its head, requiring employers to avoid assigning employees to duties that they simply do not prefer out of fear of a retaliation complaint. *See, e.g.*, *Matthews v. Corning Inc.*, 77 F. Supp. 3d at 296, 298-99 (2014) (plaintiff's move to a different project did not rise to the level of an adverse employment action in the retaliation context).

As Plaintiff cannot meet the third element of her *prima facie* case, summary judgment should enter in favor of Sargent on her FMLA retaliation claim in Count Five.

#### ii. <u>**There Are No Circumstances Giving Rise to an Inference of FMLA Retaliation.**</u>

Even if Plaintiff can establish that she suffered an adverse employment action, there are no circumstances giving rise to an inference of FMLA retaliation. Plaintiff was moved into the layout position following the retirement of another employee and because of her experience with that particular work. Sargent was limited in the areas it could place Plaintiff upon her return from FMLA leave as she was restricted from performing rail assembly and certain parts of chassis spring and had too many errors while working in parts pack.[2] Even Plaintiff acknowledges that her move to the layout position was the result of another employee's retirement, and while she claims that her manager "did not care for her", she did not connect those alleged feelings to her having taken FMLA leave. (*See supra*, p. 8.)

Plaintiff otherwise cannot point to the type of evidence suggestive of retaliatory intent. *See Sanderson v. N.Y. State Elec. & Gas Corp.*, 560 F. Appx. 88, 93 (2d Cir. 2014) ("Although many types of evidence may support an inference of discrimination . . . . Sanderson offers no such evidence. She does not, for instance, contend that the decisionmakers responsible for her discharge made remarks exhibiting sex-based animus, or that similarly situated male co-workers who declined to return to work following an order to return were treated differently.). Plaintiff has no evidence of negative remarks related to her use of FMLA leave nor does she have evidence of more favorable treatment of similarly situated comparators.

Rather, the undisputed record establishes that Sargent has granted Plaintiff numerous FMLA leaves throughout her tenure of employment, and that each time, Plaintiff was restored to her position without any adverse consequences. Against this backdrop, the fact that Plaintiff may

---

[2] It goes without saying that sending incorrect exit device equipment to a customer could have detrimental outcomes and create liability for Sargent.

have not liked her assignment upon return from her leave in 2022 does not give rise to an intentional retaliation claim.

Because Plaintiff cannot establish a *prima facie* case of FMLA retaliation, summary judgment should enter in Sargent's favor on Count Five.

**3. <u>Sargent Has Legitimate Non-Retaliatory Reasons for the Alleged Adverse Action and There is No Evidence of Pretext.</u>**

Even if Plaintiff could establish her *prima facie* case, this would only shift the burden to Sargent to establish a legitimate nonretaliatory reason for placing Plaintiff in the layout position. *McPherson*, 457 F.3d at 215. As stated above, employees in Plaintiff's job classification frequently rotate assignments for various reasons including to cover leaves and labor shortages. In this case, Plaintiff was placed in layout upon the retirement of another employee and due to the limited number of areas she could be placed given her medical restrictions and the errors she made in parts pack. (*See supra*, pp. 4-5, 8.)

The question then becomes "whether the evidence, taken as a whole, supports a sufficient rational inference of [retaliation]. To get to the jury, 'it is not enough ... to disbelieve the employer; the fact finder must also believe the plaintiff's explanation of intentional [retaliation].'" *Weinstock v. Columbia University*, 224 F.3d 33, 42 (2d Cir. 2000). Plaintiff may satisfy her burden "directly by persuading the [factfinder] . . . that a [retaliatory] reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Forestier v. City of Bridgeport*, 223 Conn. App. 298, 318 (2024), *see also Henry v. Wyeth Pharms., Inc.*, 616 F.3d 134, 156 (2d Cir. 2010).

"[P]roof that the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that the plaintiff's proffered reason . . . is correct. . . . In other words, it is not enough . . . to disbelieve the employer; the factfinder must believe the plaintiff's

explanation of intentional [plaintiff]." *Bd. of Educ. of Norwalk v. Comm'n on Human Rights & Opportunities*, 266 Conn. 492, 508 (2003) (internal quotation marks omitted). "Only where an employer's business decision is so implausible as to call into question its genuineness should [a [c]ourt conclude that a reasonable trier of fact could find that it is pretextual." *Fleming v. MaxMara USA, Inc.*, 371 F. Appx. 115, 118 (2d Cir. 2010).

The only fact Plaintiff alleges in support of pretext is the timing between her return from leave and her move to the layout position. (*See* Compl. ¶ 64.) It is well established, however, that "temporal proximity alone is not enough to establish pretext in this Circuit." *Abrams v. Dept. of Public Safety*, 764 F.3d 244, 254 (2d Cir. 2014). In the absence of any other evidence to establish pretext, summary judgment must be granted to Sargent on Count Five.

### F. Sargent Did Not Intentionally Discriminate Against the Plaintiff on the Basis of Disability in Violation of the ADA.

In Count One, Plaintiff alleges that Sargent's actions in removing her from the parts pack position, assigning her to layout, and keeping her out on medical leave were motivated by her alleged disabilities and thus violated the ADA. (Compl., Count One, ¶¶ 30-36.) Plaintiff's disability discrimination claim fails for reasons similar to her FMLA retaliation claim. Plaintiff cannot meet her *prima facie* burden as she did not suffer an adverse employment action under circumstances giving rise to an inference of disability discrimination. Even if Plaintiff could meet her *prima facie* burden, Sargent has legitimate non-discriminatory reasons for its actions, which Plaintiff cannot establish are pretextual.

#### 1. Plaintiff Cannot Establish a *Prima Facie* Case of Disability Discrimination.

Claims of disability discrimination under the ADA are also subject to the *McDonnell Douglas* burden shifting framework. *Willis v. Anthem Blue Cross & Blue Shield*, 193 F. Supp. 2d 436, 442 (D. Conn. 2001). A *prima facie* case of disability discrimination requires Plaintiff to show

that (1) Sargent is subject to the ADA and CFEPA; (2) Plaintiff "was a person with a disability within the meaning of the ADA;" (3) Plaintiff "was otherwise qualified to perform the essential functions of her job, with or without reasonable accommodation;" and (4) Plaintiff "suffered adverse employment action because of her disability." *Morris v. Town of Islip*, No. 12-CV-2984 (JFB)(SIL), 2014 U.S. Dist. LEXIS 133168, 2014 WL 4700227, at *8 (E.D.N.Y. Sept. 22, 2014).

Courts in this Circuit have applied the Supreme Court's decision in *Muldrow v. City of St. Louis*, 601 U.S. 346, 354 (2024) to ADA claims. *See Mitchell v. Planned Parenthood of Greater New York, Inc.*, 745 F. Supp. 3d 68, 91 (S.D.N.Y. 2024). In *Muldrow*, the Supreme Court held that an adverse employment action must cause an employee to suffer "some harm respecting an identifiable term or condition of employment." *Muldrow*, 601 U.S. at 354. "That said, even under *Muldrow*, some workplace events that are unpleasant are not necessarily adverse employment actions." *Mitchell*, 745 F. Supp. 3d 68, 91 (S.D.N.Y. 2024).

At the outset, Plaintiff's claim that she was assigned to the layout position and not returned to work while awaiting surgery are more properly analyzed as a failure to accommodate claim. *See, e.g.*, *Luzunaris v. Baly Cleaning Servs.*, 23-CV-11137, 2024 U.S. Dist. LEXIS 133733, at *23 (S.D.N.Y. July 29, 2024) ("[T]he gravamen of her discrimination claims is that Baly Cleaning failed to change her working conditions notwithstanding her pregnancy. . . . Accordingly, the allegations that Defendants assigned her tasks she could not complete because of her pregnancy are properly analyzed in connection with Plaintiff's claim that Defendants failed to accommodate her pregnancy.").

Even if Plaintiff could also bring a disability discrimination claim based on these allegations, they do not constitute adverse employment actions because they did not cause "some harm respecting an identifiable term or condition of employment." *Muldrow*, 601 U.S. at 354.

Notably, Plaintiff's Union did not file a grievance over her being moved to layout, which further emphasizes that Plaintiff did not experience any change to the terms and conditions of her employment.

Plaintiff's *prima facie* case further fails because there are no circumstances giving rise to an inference of disability discrimination. Sargent incorporates Section E(2)(ii) as if fully set forth herein. Plaintiff has no evidence of negative comments related to her alleged disabilities, nor does she have any evidence of similarly situated employees being treated more favorably. To the contrary, an employee with a disability and/or medical restrictions was moved into the parts pack position upon Plaintiff's removal from the same. *Montanile v. Nat'l Broad. Co.*, 211 F. Supp. 2d 481, 487 (S.D.N.Y. 2002) ("That a plaintiff is replaced by another in the same protected class weighs heavily against the inference that she suffered discrimination."),

Simply put, Sargent has accommodated Plaintiff's various medical conditions for decades, either by modifying her job duties or granting leaves of absence when necessary. Sargent has employed Plaintiff for over 40 years, including through today, despite the fact that Plaintiff has been totally incapable of working for over the last two years and thus is not qualified to perform the essential functions of her job. *See Chasse v. Computer Scis. Corp.*, 453 F. Supp. 2d 503, 518 (D. Conn. 2006) ("[i]t is axiomatic that an individual cannot perform the essential functions of a job if she is completely unable to work regardless of accommodation.").

These are not the actions of an employer who discriminates on the basis of disability. *See Willis*, 193 F. Supp. 2d 436, 443-44 (D. Conn. 2001) ("It is beyond cavil that Anthem went out of its way to more than reasonably accommodate her disability and, as noted above, find her jobs within her department which she was physically capable of doing. . . . Inasmuch as the evidence

is manifestly clear that Anthem met—indeed exceeded—its responsibilities of reasonable accommodation under the ADA, summary judgment in its favor is hereby granted on this claim.").

On this record, no reasonable trier of fact could conclude that Plaintiff has a *prima facie* case of disability discrimination, and accordingly, summary judgment should enter in favor of Sargent on Count One.

**2. Sargent has Legitimate Non-Discriminatory and Non-Pretextual Reasons for Removing Plaintiff from the Parts Pack Position, Placing Her in Layout, and Not Returning Her to Work.**

For the same reasons that Plaintiff cannot establish an inference of discrimination and for those reasons set forth in Section IV(E)(3), Plaintiff cannot establish that Sargent's legitimate non-discriminatory reasons for its actions are pretextual. Accordingly, there is no genuine issue of material fact for a jury to decide with respect to Plaintiff's disability discrimination claim in Count One, and thus, summary judgment should enter in favor of Sargent.

**G. Sargent Did Not Interfere with Plaintiff's Rights Under the FMLA.**

In Count Six, Plaintiff alleges that Sargent interfered with her rights under the FMLA "by failing to restore her to the same or equivalent position upon her return from FMLA leave on July 5, 2022" and instead "transferr[ing] Plaintiff to a Layout position that was more challenging, less accommodating of her medical restrictions, disqualified her from overtime opportunities, and denied her incentive pay." (Compl, Count Six, ¶¶ 66-67.) Plaintiff's FMLA interference claim is barred by the two-year statute of limitations. Alternatively, Plaintiff cannot establish any interference with her rights under the FMLA because she was able to take all the leave she requested and was then restored to an equivalent position upon the conclusion of her leave.

**1. <u>Plaintiff's FMLA Interference Claim is Barred by the Statute of Limitations.</u>**

As with her retaliation claim, Plaintiff's FMLA interference claim is barred by the two-year statute of limitations because Plaintiff does not have the necessary evidence of willfulness to entitle her to the longer, three-year statute. For this reason alone, Sargent should be granted summary judgment on Count Six.

**2. <u>Sargent Did Not Interfere with Plaintiff's Rights under the FMLA.</u>**

"To defeat summary judgment, a plaintiff must present a genuine issue of material fact as to each unconceded element of an FMLA interference claim. Those elements are: 1) that she is an eligible employee under the FMLA; 2) that the defendant is an employer as defined by the FMLA; 3) that she was entitled to take leave under the FMLA; 4) that she gave notice to the defendant of her intention to take leave; and 5) that she was denied benefits to which she was entitled under the FMLA." *Lievre v. JRM Constr. Mgmt., LLC*, 17-CV-4439 (BCM), 2019 U.S. Dist. LEXIS 161449, at *31-32 (S.D.N.Y. Sept. 20, 2019). "[W]hatever the nature of the alleged interference, a plaintiff can establish a violation of the Act only if the employer's actions ultimately result in the denial of a benefit under the FMLA." *Stuart v. T-Mobile USA, Inc.*, 1:14-cv-04252, 2015 U.S. Dist. LEXIS 106155, at *8-9 (S.D.N.Y. Aug. 12, 2015) (internal citations and quotations omitted). Plaintiff cannot meet her burden to prove that she was denied any FMLA benefits to which she was entitled.

It is undisputed that Plaintiff received all of the leave she requested in 2022 and 2023 (in fact, she received well more than her FMLA entitlement in 2023). (Pl's Dep. 149:23-25.) Upon returning from FMLA leave, an employee is entitled to be restored "to the position of employment held by the employee when the leave commenced" or "to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment." 29 U.S.C. § 2614(a)(1)(A)-(B). An "equivalent position" is one that is "virtually identical to the employee's

former position in terms of pay, benefits and working conditions, including privileges, perquisites and status." 29 C.F.R. § 825.215(a). "It must involve the same or substantially similar duties and responsibilities, which must entail substantially equivalent skill, effort, responsibility, and authority." *Id.* However, an employee is not entitled to "any right, benefit, or position of employment other than any right, benefit, or position to which the employee would have been entitled had the employee not taken leave." 29 U.S.C. § 2614(a)(3)(B). Moreover, "[t]he requirement that an employee be restored to the same or equivalent job with the same or equivalent pay, benefits, and terms and conditions of employment does not extend to de minimis, intangible, or unmeasurable aspects of the job." 29 C.F.R. § 825.215(f).

As previously argued with respect to Plaintiff's CTFMLA claim, no reasonable factfinder could conclude that Plaintiff was not restored to the same or equivalent position upon her return from leave. She continued to hold the classification of Labor Grade 8, Packer/Assembly/Machine Operator and she continued to perform duties within that classification for the same pay and benefits. (Pl's Dep. 62:11-14, 64:22-66:25, 99:24-100:1.) Plaintiff's preference to be in one area over another does not result in a failure to reinstate her for purposes of the FMLA as she is not entitled to any greater rights for having taken FMLA leave than she would have otherwise had. *See Wilson v. Conn. Newspaper Publ. Co.*, Case No. 3:05-CV-1364(RNC), 2007 U.S. Dist. LEXIS 100350, at *2, *4-5 (D. Conn. Mar. 31, 2007) (holding that, despite Plaintiff's perceptions, the data entry operator position into which the plaintiff was moved at the conclusion of her leave was equivalent to the plaintiff's longtime position as death notice administrator because the "pay benefits, perquisites, work station and locale, supervisor, and technical aspects of the jobs were the same").

For this additional reason, Sargent is entitled to summary judgment on Plaintiff's FMLA interference claim in Count Six.

## V. CONCLUSION

For all the foregoing reasons, there is no genuine issue of material fact for a jury to decide, and, therefore, Sargent is entitled to summary judgment on the entirety of Plaintiff's Complaint.

**DEFENDANT,**
**SARGENT MANUFACTURING COMPANY**

By: *Allison P. Dearington*
Allison P. Dearington (ct29277)
Allison.Dearington@jacksonlewis.com
Jessica L. Chamberlin (ct30942)
Jessica.Chamberlin@jacksonlewis.com
JACKSON LEWIS P.C.
90 State House Square, 8th Floor
Hartford, CT 06103
Tel: (860) 522-0404
Fax: (860) 247-1330

**CERTIFICATION OF SERVICE**

I hereby certify that on September 29, 2025, a copy of foregoing was filed electronically [and served by mail on anyone unable to accept electronic filing]. Notice of this filing will be sent by e-mail to all parties by operation of the Courts electronic filing system [or by mail to anyone unable to accept electronic filing]. Parties may access this filing through the Court's system.

*/s/ Allison P. Dearington*
Allison P. Dearington