UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| SONYA BACOTE<br>Plaintiff<br><br>v.<br><br>SARGENT MANUFACTURING COMPANY<br>Defendant | Civil Action No. 3:24-cv-01637-KAD<br><br>MARCH 20, 2026 |

**SARGENT'S REPLY IN SUPPORT OF SUMMARY JUDGMENT**

Plaintiff's belated attempts to contradict her own deposition testimony and rely on allegations not pleaded in her Complaint fail to save the claims she has not conceded from dismissal.[1]

**A. Plaintiff Concedes Several Claims.**

Plaintiff acknowledges that her testimony eliminates any claims in her Complaint regarding Sargent's decision to keep her on medical leave since April 2023. (Pl's Opp., p. 15.) Plaintiff further does not oppose summary judgment on her CTFMLA claim as it is barred by the 180-day statute of limitations. (*Id.*, p. 16.)

Additionally, Plaintiff acknowledges that any emotional distress related to Plaintiff's workplace injuries is barred by the exclusivity provision of the Connecticut Workers' Compensation Act. (*Id.*) Although Plaintiff claims that her intentional infliction of emotional distress ("IIED") claim is based on other "distinct sources of distress" such as "constant nitpicking

[1] To the extent that this Reply does not address various arguments in Plaintiff's Memorandum of Law in Opposition to Sargent's Motion for Summary Judgment ("Pl's Opp." or "Opposition"), it is because such arguments were adequately briefed in Sargent's underlying Motion and are not being conceded by Sargent. Similarly, Sargent does not admit anything contained in Plaintiff's 56(a)(2) Statement that is contradicted by evidence in Sargent's 56(a)(1) Statement.



Public

from management" and "being accused of stealing," (Pl's Opp., pp. 16-17), she has failed to plead the same in support of Count Three and cannot amend her complaint through her Opposition.[2] (*See* Compl., Count Three); *see also Ball v. Marriott Int'l, Inc.*, 627 F. Supp. 3d 296, 315 (S.D.N.Y. 2022) (stating that the court was "disinclined" to consider events not alleged in the complaint in assessing a hostile work environment claim because "[t]he central purpose of a complaint is to provide the defendant with notice of the claims asserted against it" and "a party may not use his or her opposition to a dispositive motion as a means to amend the complaint") (internal citations and quotations omitted).[3]

Thus, Plaintiff's only non-conceded remaining claims are disability discrimination and failure to accommodate under the ADA as well as FMLA interference and retaliation based on Plaintiff's move to the layout position in July 2022 and the alleged denial of overtime and incentive opportunities associated with that move. These remaining claims fail for the additional reasons stated below.

---

[3] Even if Plaintiff could premise her intentional infliction of emotional distress claim on alleged nitpicking and a vague allegation that Plaintiff was once asked what she brought from Sargent's premises to her car, the claim would still fail as neither allegation demonstrates "extreme or outrageous" conduct. (Pl's Dep. 181:3-194:3, citations to Plaintiff's deposition are attached hereto as Exhibit 17 for ease of reference.); *See McCalla v. Yale Univ.*, No. 3:17-cv-1044 (JCH), 2017 U.S. Dist. LEXIS 177297, at *10 (D. Conn. Oct. 26, 2017) (finding allegations that the plaintiff was "verbally berated" in front of co-workers were insufficient to demonstrate extreme and outrageous conduct and noting that courts have not recognized "insults, verbal taunts, threats, indignities, annoyances, petty oppressions, or conduct that displays bad manners or results in hurt feelings as extreme and outrageous") (internal citations and quotations omitted); *Taylor v. Maxxim Med., Inc.*, No. 3:99CV338 (AHN), 2000 U.S. Dist. LEXIS 19727, at *7-9 (D. Conn. Mar. 23, 2000) ("Here, Taylor alleges that the defendants falsely accused him of disclosing trade secrets, took improper disciplinary action against him, blamed, harassed and embarrassed him for the mistakes of others, ridiculed him, rejected his work and placed him on probation while he was on medical leave. Even construing the allegations in a light most favorable to Taylor, the defendants' acts do not transgress the bounds of socially tolerable behavior."); *Grasso v. Connecticut Hospice, Inc.*, 54 A.3d 221, 231 (Conn. App. Ct. 2012) ("[D]efendants who harassed, intimidated, defamed and then disciplined a plaintiff without proper investigation did not engage in conduct that was extreme and outrageous.") (citing *Tracy* v. *New Milford Public Schools*, 101 Conn. App. 560, 569 (2007)).



Public

### B. Plaintiff's Opposition to Summary Judgment on Her Remaining Claims Should Not Be Considered as It Was Filed Over Four Months Late.

This court has "broad discretion to determine whether to overlook a party's failure to comply" with court rules. *See Suares v. Cityscape Tours, Inc.*, 603 Fed. Appx. 16, 17 (2d Cir. 2015) (quoting *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) and affirming the district court's exercise of discretion to deny the plaintiff's summary judgment motion because the plaintiff's Local Rule 56.1 statement did not comply with court rules).

Sargent filed its motion for summary judgment on September 29, 2025. (Docket Entry No. 31.) Plaintiff's objection was due on October 29, 2025 (Docket Entry No. 22); however, Plaintiff did not file her objection until over four months later, on March 6, 2026. (Docket Entry No. 41.) Plaintiff did not seek to extend her deadline to object either before her initial deadline passed or *nun pro tunc*. Plaintiff has not made any argument that there is good cause to excuse her delay in filing her objection or to follow court rules, and thus, Plaintiff's Opposition to summary judgment on her remaining claims should be disregarded.

### C. Plaintiff's Statement of Facts Fails to Comply with the Local Rules.

As an initial matter, there are several places in Plaintiff's 56(a)(2) Statement where she denies a material statement of fact but fails to cite any supporting evidence or improperly asserts legal arguments to dispute the materiality of the fact. (*See* Pl's 56(a)(2) Statement ¶¶ 6-7, 14, 16, 24, 28, 36, 38, 39, 43-44, 54, 59, 60-61, 64, 66, 72.) Failure to adhere to the Local Rules allows the Court to "deem[] admitted certain facts that are supported by the evidence in accordance with Local Rule 56(a)(1)." D. Conn. L. Civ. R. 56(a)(3).[4]

[4] *See also Barone v. Judicial Branch of Conn.*, No. 3:17-cv-644 (VAB), 2019 U.S. Dist. LEXIS 221479, at *32 (D. Conn. Dec. 27, 2019) ("The Court may deem as admitted any other paragraph that is not properly denied with a specific citation to admissible evidence.").



Public

**D. Plaintiff Cannot Create a Triable Issue by Contradicting Her Sworn Testimony and Ignoring Undisputed Documentary Evidence.**

Even if the Court considers Plaintiff's late-filed Opposition and non-compliant portions of that Opposition, she still fails to establish a genuine dispute of material fact.

First, Plaintiff mischaracterizes the record evidence in several places. Plaintiff argues that the April 2022 note documenting her removal from Parts Pack "identifies neither specific errors nor supporting investigation" and that she was not responsible for the identified errors including because she was not working at the time they were made. (Pl's Opp., pp. 2-3.) Plaintiff ignores Sargent's Exhibit 8, which details the errors, and thus supplies the alleged lack of "supporting investigation". Plaintiff also ignores her own testimony that she was working while the errors captured in Exhibit 8 occurred, that she could not recall one way or the other whether she packed certain orders but was responsible for mixing up "a four-piece job", and that management could determine who was responsible for the errors based on the time stamp. (Pl's Dep. 129:2-142:9; Pl's 56(a)(2) Statement ¶ 40.) These are critical oversights because Plaintiff's pretext argument is based almost entirely on her theory that she was blamed improperly for errors in Parts Pack. She was not.

Second, Plaintiff also tries to create a question of fact by alleging that she had to repeatedly lift rails that she estimates weigh between eight and twenty pounds. (Pl's Opp., pp. 2, 5.) An August 22, 2022 doctor's note confirms that Plaintiff's lifting restriction was 10 pounds and there was no restriction on repetitive lifting up to that amount of weight. (Pl's Dep. 173:21-175:11; Exhibit 14.)[5] Plaintiff never identified the weight of any rail as posing a problem to her performing the layout work even though Plaintiff was instructed to ask for help if needed. (Def's Exhibit 10.) Plaintiff

[5] Given that Plaintiff's lifting restriction was 10 pounds during much of the relevant timeframe, Plaintiff's arguments about a five-pound lifting restriction being accommodated for 17 years are irrelevant.



Public

repeatedly points to Defendant's Exhibit 10 throughout her opposition but Exhibit 10 makes clear that Plaintiff had an issue with the height of the boxes (which were lowered) and not the weight of any rail. This is not surprising because none of the rails Plaintiff had to lift weigh more than 10 pounds. In fact, the heaviest rail Plaintiff would have lifted is a G56 full rail assy that weighs 9.15 pounds. (Exhibit 15, Photographs and Weights of Rails; Exhibit 16, Declaration of Jeffrey Granath ¶¶ 6-9.) Plaintiff cannot now defeat summary judgment by self-servingly estimating that the rails weigh more than 10 pounds.

Plaintiff next contends that she was excluded from overtime opportunities. (Pl's Opp., p. 6.) Here, too, Plaintiff fails to reconcile her allegations with her own testimony and the undisputed documentary evidence. Plaintiff alleges in her Complaint that it was her transfer to the layout position that "disqualified [her] from all assembler overtime opportunities." (Compl. ¶ 20.) Plaintiff moved into the layout position in July of 2022. Plaintiff admits that she thereafter worked overtime in the layout position. (Pl's 56(a)(2) Statement ¶ 55.) Plaintiff further admits that just four months after her transfer, in November of 2022, her doctor imposed medical restrictions that precluded her from working more than five hours per shift and then seven hours per shift. (Pl's 56(a)(2) Statement ¶¶ 57-58; Exhibit 11.) Plaintiff's claim that she could have worked overtime in areas other than layout while being under a five or seven hour per shift restriction is nonsensical. Even if Plaintiff did not have the hourly restrictions, the only overtime opportunities she specifically alleged exclusion from were: "Chassis can have a lot of work," but Plaintiff had other medical restrictions preventing her from working in parts of the chassis area. (Pl's Dep. 43:13-15, 80:7-11, 99:24-100:5.)

Lastly, Plaintiff's contention that the layout job was not an equivalent position because it



Public

required her to be on her feet all the time and that she could not sit "as needed" is also at odds with her sworn testimony:

Q. Were you able to sit down as medically necessary when you were in the layout position?

A. According to another injury, yes.

Q. And it says you could return to work on November 14 of 2022 with the following restrictions. Walk two to four hours. Stand two to four hours. You work five hours per shift. Please allow Ms. Bacote to sit and elevate her knee 15 minutes every two to three hours . . . [D]id Sargent accommodate these restrictions?

A. Yeah, they did.

(Pl's Dep. 168:16-18, 175:25-176:15.)

In sum, Plaintiff's specious attempts to contradict her own deposition testimony and the undisputed documentary evidence fail to save her claims from summary judgment.

**E. <u>Plaintiff Cannot Establish a Violation of the ADA Based on Sargent's Purported Failure to Consider her Transfer to Flat Trim.</u>**

Plaintiff argues that "[u]nder the ADA's interactive process requirement, Sargent was obligated to give good-faith consideration to" Plaintiff's requested alternative assignment of flat trim and that Sargent did not satisfy "that obligation." (Pl's Opp., p. 9.) Plaintiff fails to cite a single case in support of this legal theory.

First, any purported failure to engage in an interactive process does not give rise to a discrimination claim under the ADA "in the absence of evidence that accommodation was possible." *McBride v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92, 100-101 (2d Cir. 2009). Plaintiff has not cited to any admissible evidence that there was flat trim work available for her in July 2022.

Second, as Plaintiff acknowledges in her Opposition, employers need not provide the



Public

employee's preferred accommodation when another effective accommodation is available. (*See* Pl's Opp., pp. 8-9) (analyzing *Noll v. IBM*, 787 F.3d 89, 95 (2d Cir. 2015)). For the reasons stated above, Plaintiff has not provided admissible evidence to create a genuine issue of material fact as to whether the layout position was an effective accommodation.

Plaintiff argues that "a jury could readily find" that asking Plaintiff to notify a manager when she needed help lifting a box was "not a reasonable accommodation but an instruction to endure the problem." (Pl's Opp., p. 8.) Again, Plaintiff does not cite any case for this proposition. Courts have granted summary judgment on reasonable accommodation claims where, as here, an employee was directed to ask for help so as to not violate lifting restrictions. *See, e.g.*, *Bell v. McDonald*, 1:14CV188, 2016 U.S. Dist. LEXIS 178616, at *20 (M.D.N.C. Dec. 27, 2016) (finding the plaintiff's evidence was "insufficient to support a claim that reasonable accommodations were not provided" where the plaintiff was, *inter alia*, "instructed to ask other nurses for help if a patient needed lifting"); *Doan v. San Ramon Valley Sch. Dist.*, 2014 U.S. Dist. LEXIS 67836, at *6-7 (N.D. Cal. May 16, 2014) ("Plaintiff further concedes that he was given generous accommodations. . . . Upon returning to work, Plaintiff was given help with heavy objects and not asked to lift heavy objects with any frequency.").

**F. <u>Plaintiff Cannot Prove Willfulness So as to Avail Herself of the FMLA's Three-Year Statute of Limitations.</u>**

Plaintiff's entire willfulness argument appears within two conclusory sentences of her Opposition. (*See* Pl's Opp., pp. 12-13.) Announcing an assignment change within an employee's job classification just before that employee is expected to return from FMLA leave does not amount to "reckless disregard" of an employee's FMLA rights. *See, e.g.*, *Thorpe v. Delta Air Lines, Inc.*, 24-CV-01089(HG), 2024 U.S. Dist. LEXIS 221637, at *8 (E.D.N.Y. Dec. 6, 2024) (holding that "[t]he mere fact that Delta terminated Plaintiff while he was on leave did not in and of itself



Public

constitute willful conduct”).

As our Supreme Court has made clear, there is a “significant distinction” between alleging an “ordinary violation” of the FMLA and alleging a willful violation. *Id.* (quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 132 (1988)). Plaintiff cannot plausibly assert that her Complaint allegations make this “significant distinction”, especially when taking into account that Sargent has granted Plaintiff ***years*** of leave. Accordingly, Plaintiff’s FMLA claims should be subject to a two-year statute of limitations.

**G. Plaintiff Cannot Rely on the Continuing Violation Doctrine to Make Her FMLA Claims Timely.**

Plaintiff first contends that the “alleged interference was not a single discrete act on July 5, 2022; it was a continuing course of conduct.” (Pl’s Opp., p. 12.) The continuing violation doctrine generally does not apply outside of the hostile work environment context, and even there it is only applied where the pleadings actually allege a continuing course of conduct preceding and post-dating the cutoff for limitations purposes. *See Miner v. Town of Cheshire*, 126 F. Supp. 2d 184, 190 (D. Conn. 2000) (“Discrete incidents or even similar multiple incidents of discrimination that do not result from discriminatory policies or mechanisms, however, do not amount to a continuing violation. . . . . Moreover, courts in this circuit disfavor application of the continuing violations doctrine and hold that only compelling circumstances warrant use of this exception to the statute of limitations.”); *Cruz v. City of New York*, No. 21 Civ. 1999 (DLC), 2021 U.S. Dist. LEXIS 229190, at *11 (S.D.N.Y. Nov. 30, 2021) (“That doctrine applies only to claims that by their nature accrue only after the plaintiff has been subjected to some threshold amount of mistreatment, such as hostile work environment claims, as well as claims based on incident[s] of discrimination in furtherance of an ongoing policy of discrimination.”) (internal citations and quotations omitted).



Public

Even so, Plaintiff did not plead a continuing course of conduct and cannot raise the theory for the first time in opposition to summary judgment. *Schwetz v. Bd. of Coop. Educ. Servs. of Nassau Cnty.*, 21-CV-3396 (PKC) (LGD), 2024 U.S. Dist. LEXIS 177815, at *15 (E.D.N.Y. Sept. 30, 2024) ("A plaintiff alleging a continuing violation must clearly assert the alleged violation in both her EEOC filing and in the complaint.") (citing *Casseus v. Verizon N.Y., Inc.*, 722 F. Supp. 2d 326, 344 (E.D.N.Y. 2010) for the proposition that "courts generally do not consider claims or completely new theories of liability asserted for the first time in opposition to summary judgment").

Rather, Plaintiff pleaded three discrete acts in support of her FMLA interference and retaliation claims: a. "Transferring her to a more arduous Layout position that did not accommodate her medical restrictions; b. Disqualifying her from overtime opportunities she previously had; and c. Denying her incentive pay that prior employees in the Layout position received." (Compl. ¶¶ 63, 66, 67) ("Defendant interfered with Plaintiff's FMLA rights by failing to restore her to the same or an equivalent position upon her return from FMLA leave on July 5, 2022. Instead, Defendant transferred Plaintiff to a Layout position that was more challenging, less accommodating of her medical restrictions, disqualified her from overtime opportunities, and denied her incentive pay.").

While Sargent disputes that Plaintiff was "transferred", what is clear is that the move into the layout position is a "single completed action" that occurred at a "specific time" and is thus "actionable on its own." *See Bidon v. Collins*, No. 3:22-cv-00590 (KAD), 2025 U.S. Dist. LEXIS 57138, at *13-5 (D. Conn. Mar. 27, 2025) ("Plaintiff's temporary reassignment to the Telemetry Unit on August 17, 2020, following the patient mistreatment complaint, is clearly akin to a transfer or denial of transfer, and thus, it falls squarely within the realm of discrete acts as defined



Public

in *Morgan.*”). The same is true with respect to overtime and denial of incentive pay. *See Gentile v. Potter*, 509 F. Supp. 2d 221, 235 (E.D.N.Y. 2007) (“Each denial of overtime was a discrete act that is now time-barred. Similarly, the denial of the September 2002 holiday choice, the Labor Day and Thanksgiving Day AWOLs, the removal from the 110 dispatch area, the 1999 change in work status, and the 1996/1997 removal and suspension were all discrete acts. Alleging that these acts are part of a larger scheme or practice of discrimination or retaliation does not save them from the limitations period.”).

Applying a two-year statute of limitations, the July 5, 2022 move to the layout position and any allegedly related removal of incentive pay are clearly time barred. Further, Plaintiff has failed to submit any admissible evidence that she was denied overtime opportunities within the two-year limitations period. Rather, Plaintiff admits she was able to work overtime when her medical restrictions permitted the same. (*See* Pl’s 56(a)(2) Statement ¶ 55.)

* * *

For these reasons, as well as those stated in Sargent’s initial memorandum of law, there is no genuine issue of material fact for a jury to decide, and, therefore, Sargent is entitled to summary judgment on the entirety of Plaintiff’s Complaint.

**DEFENDANT,**
**SARGENT MANUFACTURING COMPANY**

By: *Allison P. Dearington*
Allison P. Dearington (ct29277)
Allison.Dearington@jacksonlewis.com
Jessica L. Chamberlin (ct30942)
Jessica.Chamberlin@jacksonlewis.com
JACKSON LEWIS P.C.
90 State House Square, 8th Floor
Hartford, CT 06103
Tel: (860) 522-0404
Fax: (860) 247-1330



Public

**CERTIFICATION OF SERVICE**

I hereby certify that on March 20, 2026, a copy of foregoing was filed electronically [and served by mail on anyone unable to accept electronic filing]. Notice of this filing will be sent by e-mail to all parties by operation of the Courts electronic filing system [or by mail to anyone unable to accept electronic filing]. Parties may access this filing through the Court's system.

*/s/ Allison P. Dearington*
Allison P. Dearington



Public