**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| SONYA BACOTE,<br>*Plaintiff*,<br><br>v.<br><br>SARGENT MANUFACTURING COMPANY,<br>*Defendant*. | )<br>)<br>)<br>)<br>)<br>)<br>) | CASE NO. 3:24-CV-1637 (KAD)<br><br><br><br><br>September 1, 2026 |

**MEMORANDUM OF DECISION**
**RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF No. 31)**

Kari A. Dooley, United States District Judge:

Sonya Bacote ("Plaintiff" or "Bacote") commenced this action against her former employer, Sargent Manufacturing Company ("Defendant"), alleging violations of the Americans with Disability Act (ADA), 42 U.S.C. § 12101 *et seq.*; and violations of the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2601 *et seq.*; as well as a state law claim for intentional infliction of emotional distress. Defendant filed a motion for summary judgment on all counts, ECF No. 31, which Plaintiff opposes. For the reasons set forth below, Defendant's Motion for Summary Judgment is GRANTED.

**Standard of Review**

A motion for summary judgment may be granted only where there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 113–14 (2d Cir. 2017). "A genuine issue of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Nick's Garage*, 875 F.3d at 113–14 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Which facts are material is determined by the substantive law. *Anderson*, 477 U.S. at 248. "The same standard applies whether summary

judgment is granted on the merits or on an affirmative defense . . . ." *Giordano v. Mkt. Am., Inc.*, 599 F.3d 87, 93 (2d Cir. 2010). In considering a motion for summary judgment, a court "must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Kee v. City of New York*, 12 F.4th 150, 158 (2d Cir. 2021) (citation and internal quotation marks omitted).

The moving party bears the initial burden of informing the court of the basis for its motion and identifying the admissible evidence it believes demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets this burden, the nonmoving party must set forth "specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011). He cannot "rely on conclusory allegations or unsubstantiated speculation." *Robinson v. Concentra Health Servs.*, 781 F.3d 42, 44 (2d Cir. 2015) (quotation marks and citation omitted). Nor can he rely on "mere speculation or conjecture as to the true nature of the facts." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (quotation omitted). To defeat a motion for summary judgment, the nonmoving party must present such evidence as would allow a jury to find in his favor. *Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000).

**Facts and Procedural History**

The relevant facts are taken from Defendant's Local Rule 56(a)(1) Statement ("Def.'s SMF"), ECF No. 31-2, and attached exhibits, ECF No. 31-3; Plaintiff's Local Rule 56(a)(2) Counterstatement ("Pl.'s Counter SMF"), ECF No. 41-2, and attached exhibits, ECF No. 41-1; and Plaintiff's Additional Material Facts ("Pl.'s AMF"), ECF No. 41-2, at 20–24. All the facts set forth herein are undisputed unless otherwise indicated.

Defendant is a manufacturer of commercial locks and architectural door hardware for university campuses, healthcare facilities, government buildings, and private businesses. Def.'s

SMF ¶ 1. Defendant employed Plaintiff for forty-two years. *Id.* ¶ 2. From 2005 to 2022, Plaintiff had a recurring shoulder injury that Defendant accommodated without incident.[1] *Id.* ¶ 16; Pl.'s Counter SMF ¶ 16. From 2011 to 2023, Plaintiff worked as an Assembler/Packer/Machine Operator, Labor Grade 8. Def.'s SMF ¶ 4. As such, Plaintiff's responsibilities included assembling, inspecting, and packing products. *Id.* ¶ 5.

Plaintiff suffered from anxiety, depression, and multiple panic attacks in 2022. Compl. ¶ 17; *see* Pl.'s Counter SMF ¶ 72. She also had "difficulty maintain[ing] her diabetic levels." Compl. ¶ 17. Thus, Plaintiff's doctor recommended that she take a leave of absence, which she did from May to July 2022. Compl. ¶¶ 17–18; Def.'s SMF ¶¶ 41–43.

On July 5, 2022, Plaintiff returned to the workplace. Def.'s SMF ¶ 45, Pl.'s AMF ¶ 81. Defendant assigned Plaintiff to "the layout area of the Exits Department . . . to replace an employee who had just retired." *Id.* ¶¶ 45, 48. Plaintiff had the knowledge and experience required for the assignment, and it fit within her job description. *Id.* ¶¶ 46, 48. Indeed, Defendant had the authority to assign Plaintiff and other employees to any task within their job classification. *Id.* ¶ 6.

While working in the layout area, Plaintiff experienced shoulder pain picking up overhead boxes. *Id.* ¶ 50. Plaintiff told Defendant that the boxes were too high for her to comfortably reach. *Id.* ¶ 50–51. Defendant told Plaintiff "not to pick up anything . . . higher than three feet." *Id.* ¶ 54. Defendant also told Plaintiff that, whenever she encountered an elevated box, she should "notify her manager so that the work could be assigned to another staff member." *Id.* Then, after Plaintiff submitted a "doctor's note outlining her restrictions," Defendant lowered the boxes. *Id.* ¶¶ 51–52.

[1] The Complaint alleges violations which occurred before Plaintiff returned to work in July 2022 and after she left in April 2023. *See* Compl., ECF No. 1-1, ¶¶ 8–10, 29. But in briefing the Motion for Summary Judgment, both parties have narrowed their focus to events occurring between July 2022 and April 2023. *See* Def.'s Memo, ECF No. 31-1, at 5–6, 10 (describing Defendant's accommodation of Plaintiff's medical conditions); Pl.'s Counter SMF ¶ 16 (admitting that Defendant accommodated Plaintiff's shoulder injury for at least seventeen years before July 2022); *id.* ¶¶ 62–66 (admitting that Plaintiff could not feasibly return to work after April 2023 because of her medical restrictions).

According to Defendant, "[a]fter the boxes were lowered, Plaintiff was able to work in the layout position within her medical restrictions." Def.'s SMF ¶ 53.

Plaintiff, however, asserts that she also had issues with "repetitive heavy rail lifting." *See* Pl.'s Counter SMF ¶¶ 14, 52–53. According to the doctor's note dated August 22, 2022, Plaintiff could not frequently lift objects weighing greater than ten pounds, but there was no restriction on repetitive lifting of objects weighing ten or fewer pounds. Def.'s Ex. 14, ECF No. 31-3, at 156; [2] *see* Pl.'s Counter SMF ¶ 53. Based on her recollection, Plaintiff testified that the rails could weigh "between eight [and] twenty pounds." Bacote Dep., Pl.'s Ex. 1, ECF No. 41-1, at 32; *see* Pl.'s Counter SMF ¶ 53. However, Defendant's exhibits indicate that the "heaviest rail used in the Exits Department in and around July 2022 was an electrified G-sized rail, specifically, the G56 full rail ass[a]y," which weighed 9.15 pounds. Granath Decl., Def.'s Ex. 16, ECF No. 42-2, ¶ 7; Def.'s Ex. 15, ECF No. 42-1.

In July 2022, considering the challenges of layout work, Plaintiff asked Defendant to reassign her to "flat trim." Pl.'s AMF ¶¶ 91–92. Although Plaintiff had prior experience in that role, Defendant did not grant this request. *Id.* Defendant allowed Plaintiff to work overtime within the layout area, but not outside of it. Def.'s SMF ¶ 55; Pl.'s Counter SMF ¶ 55. Plaintiff believed herself capable of handling other tasks and, although she did not suspect malicious intent, she felt excluded. Def.'s SMF ¶ 56. But medical restrictions were at least partially to blame for Plaintiff's limited overtime opportunities. Because of her placement in layout, Plaintiff was ineligible for incentive pay. *Id.* ¶¶ 60–61 (noting that for union workers like Plaintiff, the only positions that came with incentive pay were cell leads, team leads, and inspectors). However, workers who were placed in flat trim also did not receive incentive pay. *Id.* ¶ 61.

[2] When referring to Defendant's exhibits, ECF No. 31-3, or Plaintiff's exhibits, ECF No. 41-1, the Court will cite to the CM/ECF page numbers rather than the native numbering for the documents.

In November 2022, Plaintiff submitted a doctor's note to Defendant stating that she could work for five hours per shift, with two to four hours standing. Pl.'s Counter SMF ¶ 57. Eventually, when this restriction was lifted, Defendant increased Plaintiff's maximum shift to seven hours. Def.'s SMF ¶ 58. On April 3, 2023, "Plaintiff went on leave to have rotator cuff surgery," which was scheduled for August 2023. *Id.* ¶¶ 62–64. By 2025, Plaintiff had not recovered from her surgeries and "remain[ed] unable to work." *Id.* ¶¶ 62–69.

On September 10, 2024, Plaintiff filed a Complaint against Defendant in the Connecticut Superior Court, Judicial District of New Haven. Compl., ECF No. 1-1. She alleged (1) discrimination in violation of the ADA; (2) failure to accommodate in violation of the ADA; (3) intentional infliction of emotional distress (IIED); (4) violation of the Connecticut Family and Medical Leave Act ("CT FMLA"), Conn. Gen. Stat. §§ 31-51kk to 31-51qq; (5) retaliation under the FMLA, 29 U.S.C. §§ 2601 *et seq.*; and (6) interference under the FMLA. Compl. ¶¶ 30–69.

On October 14, 2024, Defendant removed the case to federal court. ECF No. 1. On September 29, 2025, Defendant filed its Motion for Summary Judgment. ECF No. 31. On March 6, 2026, over four months late,[3] Plaintiff filed her opposition. Defendant filed a Reply on March 19, 2026. ECF No. 42.

---

[3] In its Reply, Defendant asks the Court to disregard Plaintiff's opposition in its entirety because she is represented by counsel, and her opposition was filed over four months late, with neither an explanation nor a motion to extend her time to respond *nunc pro tunc*. Reply, ECF No. 42, at 3. Indeed, to date, Plaintiff has not offered any explanation for her tardiness. "Because a lawyer is the agent of his client, the client generally 'must bear the risk of attorney error.'" *Rivas v. Fischer*, 687 F.3d 514, 538 (2d Cir. 2012) (quoting *Holland v. Florida*, 560 U.S. 631,650 (2010)); *see In re Subpoenas Issued to Jams, Inc.*, No. 17-MC-207 (DLC), 2018 WL 3559092, at *3 (S.D.N.Y. July 24, 2018) ("It is always an unfortunate result when the errors of counsel must be visited on their client."). But now that Plaintiff has filed a response, no matter how inexcusably tardy, the Court is loath to ignore it entirely. However, the Court need not decide whether to strike Plaintiff's opposition because, even taking her opposition into account, the Defendant is clearly entitled to summary judgment in its favor.

**Discussion**

***Count One: Discrimination Under the ADA***

Under the ADA, "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). To establish a *prima facie* claim of discrimination, a plaintiff must show that "(1) his employer is subject to the ADA; (2) he was disabled within the meaning of the ADA; (3) he was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation; and (4) he suffered adverse employment action because of his disability." *McMillan v. City of New York*, 711 F.3d 120, 125 (2d Cir. 2013) (quoting *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 169 (2d Cir. 2006)).

Defendant seeks summary judgment as to Count One because Plaintiff has not identified any adverse employment action at all, let alone one causally connected to her disability. On this issue, courts have generally applied Title VII case law regarding adverse employment actions to ADA claims. *McSweeney v. Cohen*, 776 F. Supp. 3d 200, 236 (S.D.N.Y. 2025). Prior to 2024, the Second Circuit defined an adverse employment action under Title VII as "a *materially* adverse change in the terms and conditions of employment." *Sanders v. N.Y.C. Hum. Res. Admin.*, 361 F.3d 749, 755 (2d Cir. 2004) (emphasis added). However, in 2024, the Supreme Court, in *Muldrow v. City of St. Louis*, 144 S. Ct. 967 (2024), held that Title VII does not impose a materiality requirement, *id.* at 973–74: A plaintiff "does not have to show . . . that the harm incurred was significant[,] serious, or substantial, or any similar adjective suggesting that the disadvantage to the employee must exceed a heightened bar." *Id.* at 974 (citation omitted). Instead, a plaintiff must only show that he suffered "*some* harm respecting an identifiable term or condition of

employment." *Id.* (emphasis added); *see also Back v. Hapoalim*, No. 24-1064, 2024 WL 4746263, at *2 (2d Cir. Nov. 12, 2024) (summary order) ("[T]he transfer must have left her worse off, but need not have left her significantly so." (quoting *Muldrow*, 144 S. Ct. at 977)). Courts in this Circuit have since applied the standard in *Muldrow* to ADA claims. *Mitchell v. Planned Parenthood of Greater N.Y., Inc.*, 745 F. Supp. 3d 68, 90–91 (S.D.N.Y. 2024) (collecting cases).[4]

However, even under the lesser burden espoused in *Muldrow*, "some workplace events that are unpleasant are not necessarily adverse employment actions." *Id.* at 91. For instance, "a 'mere admonition by a supervisor without any formal consequences is not an adverse employment action because it does not represent any disadvantageous change in the terms or conditions of the plaintiff's employment.'" *Id.* (quoting *Rios v. Centerra Grp. LLC*, 106 F.4th 101, 112–13 (1st Cir. 2024)).

Here, Plaintiff asserts that her assignment to the layout area was an adverse employment action because layout work required Plaintiff to stand for extended periods of time, retrieve high boxes, and lift heavy rails. *See* Pl.'s Memo at 10. Notwithstanding, while she found these tasks difficult, Defendant did not require Plaintiff to work beyond her medical restrictions (discussed in greater detail under Count Two). *Id.* Plaintiff concedes that Defendant had the authority to assign employees to any area within their job classifications and that, to meet demand, Defendant could reassign employees "at any given time." Pl.'s Counter SMF ¶¶ 6–7. Further, layout work was within Plaintiff's job description, and Plaintiff had the experience required for the work. *Id.* ¶¶ 4, 46, 48.

Plaintiff has not presented evidence that she suffered any disadvantage such as a decrease in pay or prestige as a result of her assignment in the layout area. *See Mitchell*, 745 F. Supp. 3d at

[4] Furthermore, both Defendant and Plaintiff agree that the *Muldrow* standard is applicable to Plaintiff's ADA claim. *See* Def.'s Memo, ECF No. 31-1, at 29; Pl.'s Memo, ECF No. 41, at 10.

90. She admits that she had access to overtime within the layout area, although not outside of it. Pl.'s Counter SMF ¶ 55. And although the layout area did not allow Plaintiff to earn incentive pay, neither did her previous assignment in the screw pack area, or her requested reassignment to flat trim. Def.'s Memo at 21; Pl.'s Counter SMF ¶ 61.

Thus, Plaintiff has presented no evidence that she suffered "harm respecting an identifiable term or condition of employment." *Mitchell*, 745 F. Supp. 3d at 90 (citing *Muldrow*, 144 S. Ct. at 974). And thus, no reasonable jury could find that Plaintiff suffered an adverse employment action. Because she cannot prove an essential element of this claim, the Motion for Summary Judgment is GRANTED as to Count One.

***Count Two: Failure to Accommodate under the Americans with Disabilities Act***

The ADA requires that employers make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112(b)(5)(A). To establish a *prima facie* claim of failure to accommodate under the ADA, a plaintiff must show that "(1) [she] is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of [her] disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations." *McMillan*, 711 F.3d at 126–27 (quoting *McBride v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92, 97 (2d Cir. 2009)).

Plaintiff asserts two instances in which her position in the layout area failed to accommodate her disability: (1) reaching for high boxes, and (2) lifting heavy rails. First, as to the boxes, Plaintiff's work in the layout area did initially require her to reach for boxes higher than

three-feet above the ground. Pl.'s Counter SMF ¶ 50-54. In an email dated July 25, 2022, Plaintiff advised Defendant that this reaching caused significant shoulder pain, and she requested Defendant lower the boxes. Def.'s Ex. 10, ECF No. 31-3, at 145. Later that day, Defendant memorialized in an internal email a conversation with Plaintiff in which she agreed "not to touch" or "pick up anything higher than [three] feet" and to notify a manager if her work required reaching for anything higher so that the work could be reassigned. Def.'s Ex. 10, ECF No. 31-3, at 144. Later the same month, after Plaintiff submitted a doctor's note outlining her restrictions, Defendant lowered the boxes so that Plaintiff no longer had to do any high reaching. Pl.'s Counter SMF ¶ 51; Def.'s Ex. 1, ECF No. 31-3 at 69–70. Thus, there is no evidence to suggest that Defendant refused to accommodate Plaintiff's disability after she informed Defendant of the issue with the boxes. To the contrary, Defendant first altered her job description by directing her not to attempt to reach anything above three feet and then subsequently lowered the boxes to accommodate her restrictions.

Plaintiff nonetheless argues that Defendant failed to *timely* accommodate her inability to reach the boxes and that the initial accommodation — notifying her manager whenever she encountered an elevated box — was insufficient because it "placed the operational burden" on Plaintiff, interrupting "active workflow." Pl.'s Memo at 7. She is wrong. Undoubtedly, an employer's delay in providing a requested accommodation may sometimes be actionable as unreasonable, but a delay is generally reasonable when it is brief, in good faith, and when, as happened here, an alternative accommodation is provided in the interim. *See Dickinson v. York*, No. 916-CV-0152, 2021 WL 230126, at *10 (N.D.N.Y. Jan. 22, 2021) (citing *Selenke v. Medical Imaging of Colo.*, 248 F.3d 1249, 1262–63 (10th Cir. 2001)); *see also Strife v. Aldine Indep. Sch. Dist.*, 138 F.4th 237, 246–47 (5th Cir. 2025) (reasonable factfinder could find six-month delay

unreasonable). For example, in *Dickinson*, a paraplegic inmate requested a two-piece prison uniform and a waterproof shower chair, each of which took several weeks or months to arrive. 2021 WL 230126, at *10. In the interim, "Plaintiff was assisted by medical or correctional staff with showering." *Id.* The court held that the correctional facility did not fail to accommodate Dickinson's disabilities because the accommodations were provided within a few months, the delay was not caused by bad faith, and Defendant "provided alternative accommodations in the interim." *Id.*

Likewise, the Defendant here lowered the boxes after a short delay, within the same month that Plaintiff started the position and within a week of Plaintiff's submitting a doctor's note. In the interim, Defendant immediately provided an alternative accommodation that was not perfect, but reasonable. Just as the Plaintiff in *Dickinson* had to rely on correctional staff for help with showering, the Plaintiff here had to rely on coworkers reaching for boxes that she was unable to retrieve. *See Dickinson*, 2021 WL 230126, at *10. The delay in lowering the boxes was caused only by Defendant's request for a doctor's note, which is permitted under 42 U.S.C. § 12112(d)(4)(A) (employers can require doctor's note describing "the nature or severity of the disability" so long as inquiry is "job-related and consistent with business necessity"). Therefore, viewing the undisputed facts in the light most favorable to Plaintiff, no reasonable jury could find that Defendant failed to accommodate Plaintiff's disability as it pertains to the boxes.

Plaintiff additionally asserts that her disability was not accommodated because Defendant still required her to perform "repetitive heavy rail lifting" in the layout position. Pl.'s Counter SMF ¶¶ 14, 52–53. She testified at her deposition that she "could do it one time, sure" but that repetitively lifting the rails was "a whole different issue." Def.'s Ex. 1, ECF No. 31-3, at 70–72.

However, Plaintiff has presented no evidence that Defendant knew of this problem or had any reason to know that Plaintiff needed an accommodation regarding the rails.

Plaintiff's email referred only to the height of the boxes; it did not mention the weight or repetitive lifting of the rails. Def.'s Ex. 10, ECF No. 31-3, at 145. Moreover, according to a doctor's note dated August 22, 2022, which was provided to Defendant, Plaintiff could not lift objects weighing greater than ten pounds. The note contained no restriction on repetitive lifting of objects weighing ten or fewer pounds. Def.'s Ex. 10, ECF No. 31-3 at 156; *see* Def.'s Reply at 4. Defendant has presented evidence that the heaviest rail Plaintiff would have lifted weighed 9.15 pounds.[5] Def.'s Ex. 15, ECF No. 42-1; Def.'s Ex. 16, ECF No. 42-2 ¶¶ 6-9. Because this weight was within Plaintiff's overall weight restriction; there was no documented restriction on the frequency with which Plaintiff could lift such weight; and Plaintiff never raised the rails as an issue, Defendant had no reason to believe that any accommodation related to the rails was necessary. Therefore, because an employer cannot 'refuse[] to make [an] accommodation[],' it was never asked to make," *Dooley v. JetBlue Airways Corp.*, 636 Fed.Appx 16, 18–19 (2d Cir. 2015) (*quoting McMillan*, 711 F.3d at 126), Defendant had no duty to accommodate Plaintiff any further than it already had after lowering the boxes. *See Tobin v. Liberty Mut. Ins. Co.*, 553 F.3d 121, 129 (1st Cir.2009) ("An employer's duty to accommodate an employee's disability is ordinarily activated by a request from the employee, and the request must be sufficiently direct

[5] Although Plaintiff testified that she estimated the rails to weigh "between eight [and] twenty pounds," Bacote Dep., Pl.'s Ex. 1, ECF No. 41-1 at 32; *see* Pl.'s Counter SMF ¶ 53, her estimate is flatly contradicted by Defendants photographic evidence of the weight of the rails, Def.'s Ex. 15, ECF No. 42-1, which Plaintiff does not otherwise dispute. Her testimony, therefore, does not create a genuine dispute of material fact as to the weight of the rails or whether they implicated her weight restrictions. *See Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) (mere existence of a scintilla of evidence insufficient; must be evidence on which jury could reasonably find for plaintiff).

and specific to give the employer notice of the needed accommodation." (citations and internal quotation marks omitted)). The Motion for Summary Judgment is GRANTED as to Count Two.

***Count Three: Intentional Infliction of Emotional Distress (IIED)***

Under Connecticut law, "[t]o state a claim for intentional infliction of emotional distress, 'the plaintiff must establish four elements: (1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe.'" *Daniels v. Home Depot USA Inc.*, 720 F. Supp. 3d 117, 126 (D. Conn. 2024) (quoting *Sepega v. DeLaura*, 326 Conn. 788, 800 n.6 (2017)). A plaintiff's complete inability to prove any one of these elements entitles the defendant to summary judgment in Defendant's favor. *See Celotex*, 477 U.S. at 323 (1986) ("complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial").

In order to prevail on an IIED claim, a Plaintiff must establish that Defendant's conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Daniels*, 720 F. Supp. 3d at 126 (D. Conn. 2024) (quoting *Perez-Dickson v. Bridgeport*, 304 Conn. 483, 527 (2012)). Liability for intentional infliction of emotional distress requires conduct which is "especially calculated to cause, and does cause, mental distress of a very serious kind." *Bell v. Bd. of Educ. of West Haven,* 55 Conn. App. 400, 409–10 (1999). "It is the intent to cause injury that is the gravamen of the tort." *Stancuna v. Schaffer,* 122 Conn. App. 484, 492–93 (2010). "Conduct on the part of the defendant that is merely insulting or displays bad manners or results in hurt feelings is insufficient . . . ." *Id.* "Whether a defendant's conduct is sufficient to satisfy the

requirement that it be extreme and outrageous is initially a question for the court to determine. Only where reasonable minds disagree does it become an issue for the jury." *Appleton v. Bd. of Educ. of Stonington*, 254 Conn. 205, 210 (2000) (citation omitted).

In support of her IIED claim, Plaintiff cites Defendant's delay in lowering the boxes in the layout area, constant "nitpicking from management," and one accusation of stealing. Pl.'s Counter SMF ¶ 50, 70. Although this conduct may have been upsetting to Plaintiff, it did not rise to the level of "extreme and outrageous." *Compare Daniels*, 720 F. Supp. 3d at 127–30 (holding an accusation of stealing was plausibly extreme and outrageous because it referenced racial slurs and explicitly invoked a "malignant stereotypical assumption that thieving is what Black people do"), *and Appleton*, 254 Conn. at 211–12 (holding no extreme conduct where Defendant made "condescending comments," questioned Plaintiff's vision and ability to read, and had police escort Plaintiff out of the building). Here, significantly, Plaintiff did not suspect any malicious intent behind her assignment to the layout area or Defendant's response to her accommodation request. And there is simply no reading of Plaintiff's allegations or the record evidence that Defendant's conduct was so "extreme and outrageous" as to allow the inference of such intent. The Motion for Summary Judgment is GRANTED as to Count Three.

***Count Four: Connecticut Family and Medical Leave Act***

Defendant seeks summary judgment on Count Four on the ground that the claim is time-barred. "Any employee aggrieved by a violation of the [CT FMLA] may bring a civil action in a court of competent jurisdiction against the employer not later than one hundred eighty (180) calendar days after the employer action . . . ." Conn. Agency Regs. § 31-51qq-43(a); *see also* Conn. Gen. Stat. § 31-51qq (authorizing the Labor Commissioner to adopt regulations in accordance with the statute). On July 5, 2022, Plaintiff was assigned to the layout area. Pl.'s

Counter SMF ¶¶ 45, 81. She did not commence this action until September 18, 2024 — 806 days later — when she served her Complaint on Defendant. Pet. for Removal at 1. Thus, as Plaintiff concedes, Count Four is barred by the 180-day limitation period. *See* Pl.'s Memo at 16. The Motion for Summary Judgment is GRANTED as to Count Four.

***Counts Five and Six: Family and Medical Leave Act***

Claims brought under the FMLA are subject to a two-year statute of limitations, except for willful violations, which have a three-year limitation period. 29 U.S.C. § 2617(c)(1)–(2). Defendant seeks summary judgment on Plaintiff's FMLA claims on the ground that they are time barred. Plaintiff was assigned to the layout area on July 5, 2022. She commenced this action on September 18, 2024, beyond the two-year limitation but within the three-year limitation. "A violation is 'willful' when the employer, 'knew or showed reckless disregard for the matter of whether its conduct was prohibited.'" *Offor v. Mercy Med. Ctr.*, 676 Fed.Appx 51, 53 (2d Cir. 2017) (quoting *Porter v. N.Y. Univ. Sch. of Law*, 392 F.3d 530, 531 (2d Cir. 2004) (per curiam)). "Simply asserting that the conduct was willful is not enough." *Kitani v. N.Y.C. Transit*, No. 19-CV-01043, 2025 WL 459686, at *9 (S.D.N.Y. Feb. 11, 2025) (*citing Whiteside v. Hover-Davis, Inc.*, 995 F.3d 315, 320–21 (2d Cir. 2021)).

The Court first observes that Plaintiff's Complaint did not allege a willful violation of the FMLA. *See* Compl. ¶¶ 62–69. And there is simply no evidence from which a reasonable jury could infer willfulness.[6] In attempting to resurrect this claim, Plaintiff argues that Defendant "pre-announced the layout assignment while Plaintiff was still on FMLA leave, without consulting her, and told her upon return that it was 'the only job' available." Pl's Memo at 12–13. But Plaintiff fails to explain how Defendant's decision to allocate its resources and employees in advance of

---

[6] Defendant does not concede that it violated the FMLA, which the Court does not assess. Rather Defendant seeks summary judgment on its affirmative defense that the claim was not timely brought.

Plaintiff's return from leave is a violation of the FMLA at all, let alone a willful one. *Cf. Thorpe v. Delta Air Lines, Inc.*, No. 24-CV-01089, 2024 WL 5007423, at *4 (E.D.N.Y. Dec. 6, 2024) ("The mere fact that Delta terminated Plaintiff while he was on leave did not in and of itself constitute willful conduct."). Indeed, Defendant assigned Plaintiff to the layout "to replace an employee who had just retired." Pl.'s Counter SMF ¶ 48. In short, Plaintiff has not provided any evidence that Defendant knowingly or recklessly violated the FMLA. *See Kitani*, 2025 WL 459686, at *9.

Accordingly, Plaintiff's FLMA claims are time-barred. *See* 29 U.S.C. § 2617(c)(1).[7] The Motion for Summary Judgment is GRANTED as to Count Five and Count Six.

**Conclusion**

For the reasons discussed above, Defendant's Motion for Summary Judgment is **GRANTED** in its entirety. The Clerk of the Court is directed to enter judgment in favor of the Defendant and to close this case.

**SO ORDERED** at Bridgeport, Connecticut, this 1st day of September 2026.

*/s/ Kari A. Dooley*
KARI A. DOOLEY
UNITED STATES DISTRICT JUDGE

[7] Plaintiff also argues that, even if the violation was not willful, the claim is timely because the offense was a continuing violation, rather than a single discrete act. Pl.'s Memo at 12. She asserts that Defendant's "failure to restore Plaintiff to an equivalent position persisted throughout the period she remained in layout—from July 2022 through April 2023—as the accommodation failures (unresolved rail lifting, overhead retrieval, overtime exclusion) continued on an ongoing basis." Pl.'s Memo at 12. Plaintiff conflates her ADA claim with her FMLA claim. But under any reading, this argument fails. "[A] continuing violation is not established merely because an employee continues to feel the effects of a discriminatory act." *Miner v. Town of Cheshire*, 126 F. Supp. 2d 184, 190 (quoting *Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 907–08 (2d Cir.1997). And further, generally, the continuing violation doctrine does not apply to FMLA claims. *Landolfi v. Town of North Haven*, No. 22-CV-770, 2024 WL 3925332, at *4 (D. Conn. Aug. 23, 2024) (collecting cases).